737 S.E.2d 282

**In re D.P.**

**No. 12–0141.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 25, 2012.

Decided Nov. 21, 2012.

Darrell V. McGraw, Jr., Attorney General, Katherine M. Bond, Esq., Assistant Attorney General, White Hall, WV, for Petitioner Department of Health and Human Resources.

Allison Adyniec Cowden, Esq., Weirton, WV, Guardian Ad Litem for D.P.

Duane C. Rosenlieb, Jr., Esq., Saint Albans, WV, Richard H. Lorenson, Esq., Charleston, WV, F. William Brogan, Jr., Esq., Weirton, WV, for Respondent J.W.

1. Because of the sensitive nature of the facts alleged in this case, we use the initials of the affected parties. *See State v. Edward Charles L.,* 183 W.Va. 641, 645 n. 1, 398 S.E.2d 123, 127 n.

**PER CURIAM:**

In this appeal from the Circuit Court of Hancock County, the Department of Health and Human Resources appeals a circuit court's order dismissing a petition alleging a father had abused and neglected his daughter. After vesting legal custody of the child with the child's grandmother—a disposition the Department supported—the circuit court determined that further hearings on the petition would be "idiotic" and not in the best interests of the child. The Department asserts that the circuit court was still required to formally determine whether abuse or neglect occurred before the petition could be dismissed.

We find no error in the record, and affirm the circuit court's order.

**I.**

This case involves D.P.,[1] a child born in January 1995. For most of her life D.P. has lived in the care and custody of her grandmother in Pennsylvania. Her mother died of an apparent drug overdose. Her father, respondent J.W., allegedly threatened the grandmother that if she ever sought formal, legal custody of the child, he would assert his custodial rights and take the child away from her. The grandmother stated she did not have the money necessary to file for legal custody.

During the summer of 2011, when she was 16 years old, D.P. had an emotional break-up with a boyfriend. She suffered serious mental health issues, and her grandmother took her to an emergency room. A doctor determined she was not a danger to herself and cleared her for discharge, but suggested that she spend a few nights away from her grandmother with an aunt as a "cooling-off" or respite period.

D.P. went to her aunt's home in Pennsylvania, but was not allowed to take her pets with her. D.P. refused to stay at her aunt's without her pets and, in desperation, called

1 (1990) ("Consistent with our practice in cases involving sensitive matters, we use the victim's initials.")

her father J.W. in West Virginia to come and get her. On August 2, 2011, J.W. went to Pennsylvania and drove D.P. and her pets back to his West Virginia home.

On August 7th—after "residing" with her father for a total of five days—D.P. was taken into emergency protective custody by the Department of Health and Human Resources. The Department thereafter filed a petition to find that D.P. was abused and/or neglected by J.W. The petition alleged that J.W. furnished alcohol to D.P. in his home; that J.W. had been arrested for driving under the influence with D.P. in the car, and that the officer had simultaneously cited D.P. for underage consumption; and that D.P. had awoken after drinking to find a naked man on her bedroom floor and a hickey on her neck from this man. The petition also alleged that D.P.'s father had told other teenagers they could do whatever they wanted to D.P. in exchange for marijuana. D.P. later tested positive for the drugs marijuana and klonopin.[2]

A multi-disciplinary team meeting was convened on August 26, 2011. The meeting included D.P.'s guardian *ad litem*, the Department's caseworker, the caseworker's supervisor, J.W.'s counsel, and D.P.'s grandmother, aunt, and uncle. D.P.'s father, J.W., was not present because he had been extradited to Pennsylvania to face charges there. The multi-disciplinary team unanimously agreed that the child should be promptly returned home with her grandmother. The team determined that the most expeditious way to return the child was to have the grandmother, by separate petition, file for legal guardianship of the child. The team also unanimously agreed to recommend to the circuit court that the abuse and neglect petition should be dismissed.

Subsequently, on September 28, 2011, the circuit court—after finding it was in the child's best interest—formally appointed D.P.'s grandmother as her legal guardian.

The child's guardian *ad litem* moved to dismiss the abuse and neglect petition, because at the multi-disciplinary team meeting, it had been agreed by all parties—including the Department—that the petition could interfere with the grandmother's legal guardianship under the Interstate Compact on the Placement of Children. *See, W.Va.Code* § 49–2A–1 *et seq.* The Department, however, changed its position and objected to the dismissal, ostensibly because J.W. *might,* in the future, attempt to reassert his rights to custody of D.P. The Department therefore wanted to proceed with a full adjudication of the petition.

After several hearings, the circuit court dismissed the abuse and neglect petition in an order dated January 13, 2012. The circuit court noted that the child had lived in West Virginia for less than a week before the petition was filed, and that her only other contact with her father had been "trivial." "[E]xcept for his brief and deplorable contact with his daughter when the negligent acts occurred, [J.W.] never played any meaningful role in his daughter's life." The circuit court also noted that D.P. had mental health issues that might be exacerbated if she were required to testify, and noted that she was nearing the age of majority (she will turn 18 in January 2013).

Based on these facts, the circuit court determined that J.W. "didn't have a snowball's chance in hell of ever regaining custody" of his daughter, D.P., and that "it was idiotic to subject [D.P.] to a worthless Adjudicatory Hearing where she would have to testify about what had happened to her." The circuit court acknowledged the diligence of the Department's case workers, but went on to note that the Department's argument in this case was nothing more than a "Department policy." In light of the facts, the circuit court found the Department's argument was "absurd," and found the local caseworkers were merely "compelled ... to parrot the position of the Department." The circuit court concluded that "blind adherence" to a

---

2. Klonopin is a benzodiazepine that helps control seizures and panic attacks. A police officer found an empty prescription bottle for klonopin in J.W.'s house. The prescription, written for J.W.'s girlfriend, had been filled on July 27, 2011. The girlfriend was incarcerated, and the prescription had supposedly been filled so she would have her medication when she was released. J.W. could not explain why there were no pills in the bottle.

generic policy to pursue every petition to a full adjudication was not in D.P.'s best interests.

The Department now appeals the January 13, 2012, dismissal order.

## II.

■ We apply the following multi-faceted standard of review:

Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syllabus Point 1, *In the Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

■ When a circuit court examines an abuse and neglect petition, *W.Va.Code* § 49-6-5(1) [2011] requires the court to "give precedence to dispositions in the following sequence: (1) Dismiss the petition." Still, when a petition alleging abuse and/or neglect has been filed, the circuit court must hold hearings to determine whether the child has been abused or neglected. *See* Syllabus Point 1, *State v. T.C.*, 172 W.Va. 47, 303

S.E.2d 685 (1983). It is axiomatic that, in any contest involving the care and custody of a minor, "the welfare of the child is the polar star by which the discretion of the court will be guided." Syllabus Point 2, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, 47 S.E.2d 221 (1948). *See also* Syllabus Point 3, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children.")

■ In the instant case, the circuit court afforded the parties several hearings, and the initial position of *all* of the parties was that the petition should be dismissed. It was only after the child had been placed with her grandmother as legal custodian (a disposition agreed to by the Department) that the Department changed its position and asserted that further hearings were necessary. The circuit court provided the Department with a "meaningful opportunity to be heard," as required by *W.Va.Code* § 49-6-2(c) [2006]. At no time did the Department justify how the child's health, welfare or best interests would be promoted by further adjudication on the petition.[3]

We believe that the circuit court was within its right when it found that the Department had asserted procedure over substance. After carefully reviewing the record, it is clear that the circuit court did not err in its finding that full adjudication of the petition was not in the best interests of D.P.

## III.

The circuit court's January 13, 2012, order is affirmed.

Affirmed.

---

**3.** For a contrary example, *see In re T.W.*, 230 W.Va. 172, 737 S.E.2d 69 (2012), where the Department raised grievous allegations of abuse and neglect against a father of four children. The father voluntarily consented to termination of parental rights to two children, on condition that the circuit court not conduct hearings. The circuit court granted the voluntary termination.

This Court reversed, finding that the potential existed for future visitation between the parent and the two children to whom parental rights were not terminated. In *T.W.*, the Department demonstrated that it was in the best interests of all four children for the circuit court to conduct full hearings.