# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

### January 2014 Term

No. 13-0505

FILED

May 8, 2014

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## IN RE: ADOPTION OF C.R.

---

**Appeal from the Circuit Court of Harrison County**
**Honorable John Lewis Marks, Jr., Judge**
**Civil Action No. 12-A-15-1**

**REVERSED AND REMANDED**

---

**Submitted: April 9, 2014**
**Filed: May 8, 2014**

Allison S. McClure
McNeer, Highland, McMunn and Varner, L.C.
Clarksburg, West Virginia
Attorney for the Petitioners

**The Opinion of the Court was delivered PER CURIAM.**

**SYLLABUS BY THE COURT**

1.      "In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review.  We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.  Questions of law are subject to a *de novo* review."  Syllabus point 2, *Walker v. West Virginia Ethics Commission*, 201 W. Va. 108, 492 S.E.2d 167 (1997).

2.      "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."  Syllabus point 1, *Appalachian Power Co. v. State Tax Department of West Virginia*, 195 W. Va. 573, 466 S.E.2d 424 (1995).

3.      "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."  Syllabus point 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

4.      "The duty of a parent to support a child is a basic duty owed by the parent to the child[.]"  Syllabus point 3, in part, *Wyatt v. Wyatt*, 185 W. Va. 472, 408 S.E.2d 51 (1991).

**Per Curiam:**

The petitioners herein and petitioners below, C.B.[1] (hereinafter "Mother") and W.B. (hereinafter "Stepfather"), appeal from an order entered April 18, 2013, by the Circuit Court of Harrison County. By that order, the circuit court denied the petitioners' motion to terminate the parental rights of the respondent herein and respondent below, G.R. (hereinafter "Father"),[2] and denied their motion to allow Stepfather to adopt the minor child. On appeal to this Court, the petitioners contend that the circuit court erred by denying the subject stepparent adoption. Upon a review of the parties' briefs, the record on appeal, and the pertinent authorities, we reverse the April 18, 2013, order of the Harrison County Circuit Court and remand this case for further proceedings consistent with this opinion.

---

[1]In keeping with our practice in similar matters involving sensitive facts, we refer to the parties herein by their initials only. *See, e.g.*, *In re Visitation of A.P.*, 231 W. Va. 38, __ n.1, 743 S.E.2d 346, 347 n.1 (2013) (per curiam); *In re D.P.*, 230 W. Va. 254, 255 n.1, 737 S.E.2d 282, 283 n.1 (2012) (per curiam). *See also* W. Va. R. App. P. 40(e)(1) (restricting use of personal identifiers in cases involving children).

[2]While respondent father has not filed a brief or otherwise appeared before the Court in the instant proceeding, he did participate in the underlying circuit court proceedings.

1

# I.

## FACTUAL AND PROCEDURAL HISTORY

Mother and Father were married to each other when the subject child, C.R., was born in 2001. In 2004, Father, who was an approved childcare provider, allegedly sexually abused a six-year-old child for whom he was caring. Father was convicted of two counts of first degree sexual abuse in the Circuit Court of Harrison County on January 9, 2007. He served approximately two and one-half years for these convictions and is currently serving twenty-five years of probation; as a result of these convictions, he also is registered as a sex offender. A condition of his probation requires Father to petition the court for permission to have visitation with any minor child. It does not appear that Father has ever requested permission to visit with C.R., and he last visited with his child in 2005. Father has, however, paid court-ordered child support for C.R. through wage withholding since his release from incarceration.[3]

Mother and C.R. have been living continuously with Stepfather since July 2006. Stepfather considers himself to be the child's father, and the child considers Stepfather to be likewise. Mother and Father were divorced by order entered August 7, 2009. Because he was incarcerated and required to register as a sex offender upon his release, Father was

---

[3]Father was released in October 2009 and became employed in November 2009. Pursuant to the parties' final divorce order, Father's child support obligation is $206.66 per month.

2

not granted visitation with C.R. in the final divorce order. Additionally, consistent with the conditions of his supervised release and probation, the parties' divorce order specifically requires Father to petition the court to modify the child's custody to permit Father to request supervised visitation with his child. It does not appear from the record that Father has ever requested permission from the court to visit with his child or that he has had, or has attempted to have, any other contact with the child. Mother and Stepfather were married on October 2, 2010.

On June 21, 2012, Mother and Stepfather filed a "Petition for Adoption" in the Circuit Court of Harrison County to permit Stepfather to adopt C.R. C.R. desires to be adopted by Stepfather and would like to take Stepfather's last name. Father, however, refused to consent to the adoption, sent a letter to the court specifically objecting thereto, and appeared *pro se* at the adoption hearing. By order entered April 18, 2013, the circuit court denied the adoption, ruling that "the biological father has not abandoned the minor child." In this regard, the circuit court relied upon W. Va. Code § 48-22-306(a) (2001) (Repl. Vol. 2009), which requires both a birth parent's failure to financially support his/her child and a failure to visit or communicate with his/her child to establish the presumption of abandonment. *Citing* Syl. pt. 2, *In re Jeffries*, 204 W. Va. 360, 512 S.E.2d 873 (1998). The court further recognized the petitioners' concerns regarding Father's parental fitness in light of his conviction and incarceration for sexual abuse of another child, but determined that

3

"West Virginia's adoption statutes, W. Va. Code §§ 48-22-101, et seq., . . . do not provide the proper forum for the termination of the biological father's parental rights in this particular regard." From this adverse ruling, Mother and Stepfather appeal to this Court.

## II.

## STANDARD OF REVIEW

In the instant proceeding, we are called upon to determine whether the circuit court properly applied the applicable law to deny the requested stepparent adoption. We previously have held that,

> [i]n reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. pt. 2, *Walker v. West Virginia Ethics Comm'n*, 201 W. Va. 108, 492 S.E.2d 167 (1997). Furthermore, insofar as the instant proceeding concerns a matter of statutory construction, we review anew the circuit court's construction of the applicable adoption statutes: "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W. Va. 573, 466 S.E.2d 424 (1995). *Accord* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from

4

the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). Mindful of these standards, we proceed to consider the assigned errors.

## III.

## DISCUSSION

The sole issue presented for our consideration and resolution in this proceeding is whether the circuit court properly interpreted and applied the pertinent adoption statutes to deny the requested stepparent adoption based upon its conclusion that Father had not abandoned his child. On appeal to this Court, Mother and Stepfather argue that Father's conduct constitutes abandonment and that the circuit court erred by denying their adoption petition. Based upon our application of the governing law to the facts of this case, we agree with the petitioners that the circuit court erred by denying the requested stepparent adoption.

In West Virginia, adoptions are governed by statute. *See generally* W. Va. Code § 48-22-101 *et seq.* When addressing an issue of statutory construction and application, we previously have ruled that "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W. Va. at 587, 466 S.E.2d at 438. Thus, "[w]hen a statute is clear and

5

unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959). *Accord* Syl. pt. 2, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968) ("Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.").

At issue in the instant proceeding is whether Father has abandoned his child so as to warrant a termination of Father's parental rights to permit Stepfather to adopt the child. Because the subject child was born during the parents' marriage, both Mother's and Father's consent to the adoption, or relinquishment of parental rights to permit the adoption, is required unless one of the statutory exceptions to the consent/relinquishment requirement is satisfied:

> (a) Subject to the limitations hereinafter set forth, consent to or relinquishment for adoption of a minor child is required of:
>
> (1) The parents or surviving parent, whether adult or infant, of a marital child[.][4]
>
> . . . .

---

[4]A "marital child" "means a child born or conceived during marriage." W. Va. Code § 48-22-111 (2001) (Repl. Vol. 2009). The parties do not dispute that the subject child was born while Mother and Father were married to each other.

6

(b) Consent or relinquishment shall not be required of a parent or of any other person having custody of the adoptive child:

(1) Whose parental rights have been terminated pursuant to the provisions of article three [§§ 49-3-1 et seq.], chapter forty-nine of this code;

(2) Whom the court finds has abandoned the child as set forth in 22-306 [§ 48-22-306]; or

(3) Who, in a stepparent adoption, is the birth parent or adoptive parent of the child and is married to the petitioning adoptive parent. In such stepparent adoption, the parent must assent to the adoption by joining as a party to the petition for adoption.

W. Va. Code §§ 48-22-301(a)(1), (b)(1-3) (2001) (Repl. Vol. 2009) (footnote added). Thus, the statutory language of W. Va. Code §§ 48-22-301(b)(1-3) clearly provides that a parent's consent or relinquishment is not required to permit the adoption of a marital child where (1) the parent's parental rights have been terminated; (2) the court determines that the parent has abandoned the child pursuant to W. Va. Code § 48-22-306; or (3) in a stepparent adoption, the child's parent is married to the petitioning adoptive stepparent and has joined in the stepparent's adoption petition.

In the case *sub judice*, Mother has joined in Steppfather's petition to adopt the minor child so her consent to the adoption comes within the third exception to the consent/relinquishment requirement. *See* W. Va. Code § 48-22-301(b)(3). Father's parental rights to the subject child have not been terminated within the contemplation of W. Va. Code

7

§ 48-22-301(b)(1). Therefore, to obviate the consent/relinquishment requirement, it is necessary to find that Father has abandoned his child pursuant to W. Va. Code § 48-22-306. *See* W. Va. Code § 48-22-301(b)(2).

W. Va. Code § 48-22-306 (2001) (Repl. Vol. 2009), entitled "Conduct presumptively constituting abandonment," provides, in pertinent part, as follows:

> (a) Abandonment of a child over the age of six months shall be presumed when the birth parent:
>
> (1) Fails to financially support the child within the means of the birth parent; and
>
> (2) Fails to visit or otherwise communicate with the child when he or she knows where the child resides, is physically and financially able to do so and is not prevented from doing so by the person or authorized agency having the care or custody of the child: Provided, That such failure to act continues uninterrupted for a period of six months immediately preceding the filing of the adoption petition.
>
> . . . .
>
> (d) Notwithstanding any provision in this section to the contrary, any birth parent shall have the opportunity to demonstrate to the court the existence of compelling circumstances preventing said parent from supporting, visiting or otherwise communicating with the child: Provided, That in no event may incarceration provide such a compelling circumstance if the crime resulting in the incarceration involved a rape in which the child was conceived.

Thus, to establish the statutory presumption of abandonment to overcome the consent/relinquishment requirement, the plain language of W. Va. Code §§ 48-22-306(a)(1-

8

2) requires the failure of the child's parent to (1) financially support the child within the parent's means and (2) visit or communicate with the child when the parent knows where the child resides, is physically and financially able to do so, and has not been prevented from doing so, for a period of six months prior to the filing of the adoption petition. *See also* Syl. pt. 2, *In re Jeffries*, 204 W. Va. 360, 512 S.E.2d 873 (1998) (affording similar construction to predecessor of W. Va. Code § 48-22-306(a)). W. Va. Code § 48-22-306(d) additionally allows the parent to demonstrate compelling circumstances that have precluded the parent from financially supporting or visiting or communicating with the child.

Applying these factors to the case presently before us, we find that the circuit court erred by concluding that Father's involuntary payment of child support through wage withholding was sufficient to overcome the first factor of the statutory presumption of abandonment. *See* W. Va. Code § 48-22-306(a)(1). The last time Father had contact with his child was in 2005. Father and Mother remained married until August 2009. At no time during this period did Father provide any financial support for his child, either voluntarily or because he was required to do so by court order, even though he had an irrefutable duty to support his child. To this end, we previously have held that "[t]he duty of a parent to support a child is a basic duty owed by the parent to the child[.]" Syl. pt. 3, in part, *Wyatt v. Wyatt*, 185 W. Va. 472, 408 S.E.2d 51 (1991). *Accord In re Jamie Nicole H.*, 205 W. Va. 176, 183, 517 S.E.2d 41, 48 (1999) ("[P]rovision of . . . financial support for children is one

9

of the most basic components of parental responsibility."); *Supcoe v. Shearer*, 204 W. Va. 326, 330, 512 S.E.2d 583, 587 (1998) (per curiam) ("[T]he obligation of child support is grounded in the moral and legal duty of support of one's children from the time of birth."). *See also In re L.N.D.*, 219 S.W.3d 820, 828 n.7 (Mo. Ct. App. 2007) ("Father had a continuing obligation to support [his child] without being ordered to do so." (citations omitted)). Additionally, Father has not presented any evidence of "compelling circumstances" that would have relieved him of his duty to support his child. *See* W. Va. Code § 48-22-306(d).

Moreover, although Father was incarcerated from 2007 to 2009, incarceration does not relieve a parent of the duty to provide financial support for his/her child. *See, e.g.*, *In re L.N.D.*, 219 S.W.3d at 828 ("Incarceration did not discharge Father's . . . obligation to make a minimal financial contribution for [his child's] support so as to demonstrate an intent to continue the parent-child relationship." (citations omitted)).

Father finally began providing financial support for his child in November 2009 when his wages were withheld specifically for the purpose of fulfilling his child support obligation. Unlike subsection (2) which requires the lack of communication to exist for the six months immediately preceding the adoption petition, the support requirement of subsection (1) contains no such temporal parameters. *Compare* W. Va. Code § 48-22-

306(a)(2) *with* W. Va. Code § 48-22-306(a)(1). Thus, while Father may have been involuntarily providing support for his child through wage withholding since his employment upon his release from incarceration, Father never financially supported his child until he was judicially required to do so and his wages were involuntarily withheld. Moreover, at no time since Father last had contact with his child in 2005 has he ever voluntarily provided financial support despite his basic obligation to do so. *See, e.g., In re Jamie Nicole H.*, 205 W. Va. at 183, 517 S.E.2d at 48 ("[P]rovision of . . . financial support for children is one of the most basic components of parental responsibility."); Syl. pt. 3, in part, *Wyatt v. Wyatt*, 185 W. Va. 472, 408 S.E.2d 51 ("The duty of a parent to support a child is a basic duty owed by the parent to the child[.]"). Upon these facts, we conclude that the petitioners have presented sufficient evidence to prove the first prong of the statutory presumption of abandonment set forth in W. Va. Code § 48-22-306(a)(1).[5] *Accord Kayla F. v. Leonard F.*, No. 12-1465, 2013

---

[5]We note that other jurisdictions also have concluded that the involuntary payment of child support through wage withholding is sufficient to demonstrate a lack of financial support so as to establish abandonment. *See, e.g.*, *In re K.D.*, 285 Ga. App. 673, 679, 647 S.E.2d 360, 366 (2007) (approving termination of parental rights based, in part, upon finding that father failed to fulfill his obligation to support his child where father failed to provide any support during child's first year of life; he involuntarily paid the balance of his child support arrearage when his income tax refund was intercepted and used to pay the balance due; and "the only child support [father] has paid has been that which was garnished from his wages"); *In re Adoption of R.W.B.*, 27 Kan. App. 2d 549, 553-56, 7 P.3d 306, 309-11 (2000) (granting petition for stepparent adoption where father failed to rebut presumption of abandonment because he had failed to pay a substantial portion of his court-ordered child support: although father had the means to pay child support, he paid only 31% of his court-ordered child support obligation and failed to provide any court-ordered medical insurance for his children); *In re H.N.S.*, 342 S.W.3d 344, 350 (Mo. Ct. App. 2011) (concluding
(continued...)

11

WL 3929080 (W. Va. July 30, 2013) (finding abandonment and allowing paternal grandparents to adopt child where child had been removed from parents' home due to medical neglect, mother rarely visited with child, and mother had not voluntarily paid child support, but had provided child support through wage withholding).

Considering the second prong of the statutory presumption of abandonment, W. Va. Code § 48-22-306(a)(2), we conclude that the petitioners also presented sufficient evidence to establish that Father has failed to "visit or otherwise communicate with the child" for the six-month period immediately preceding their petition for stepparent adoption. The uncontested evidence of record shows that Father last visited with his child in 2005, some

---

[5](...continued) involuntary payment of child support through tax intercept was insufficient to establish that father had financially supported his child and supported finding of abandonment to obviate need for father's consent to adoption); *Askew v. Taylor*, No. 2004CA00184, 2004 WL 2315190, at *3 (Ohio Ct. App. Oct. 12, 2004) (determining father's consent to stepfather's adoption of father's child was not required where court found that father had failed to provide support for his child where he had made only two payments of child support through involuntary withholding of his prison wages, where he had made no voluntary payments of child support, and where he was incarcerated after having been convicted of felony child endangerment after having injured his child). *But see, e.g.*, *In re Adoption of Hayley*, 190 Misc. 2d 764, 772, 740 N.Y.S.2d 557, 563 (N.Y. Fam. Ct. 2000) (deeming child support payments made through wage withholding to be voluntary based upon number and frequency of such payments and father's "acquiescence to said payments through a lack of any affirmative action, on his part, to either reduce, set aside or otherwise challenge the underlying support order"); *In re Adoption of Kessler*, 87 Ohio App. 3d 317, 322-23, 622 N.E.2d 354, 357-58 (1993) (concluding that involuntary payments of child support made through interception of father's federal income tax refund was sufficient to establish father's payment of child support so as to defeat statutory presumption of abandonment based upon failure to support child).

nine years ago, and that he did not have contact with his child in the six months prior to the filing of the instant adoption petition. For the time period from 2005 until his incarceration in 2007, Father has not provided a reason to excuse his lack of visitation or communication with the child other than that Mother may have discouraged, but not outright forbidden, such contact in light of the then-pending sexual abuse charges involving another child.

On April 23, 2007, the circuit court sentenced Father to two consecutive terms of imprisonment of one to five years followed by twenty-five years of probation and supervised release. Among the conditions imposed upon Father's supervised release was the requirement that he "not exercise visitation with any minor child . . . without petitioning the Court for a modification of this condition and being granted permission to do so in accord[ance] with West Virginia Code § 62-12-9(a)(4)[.]"[6] The parents' August 7, 2009,

---

[6]Pursuant to W. Va. Code § 62-12-9(a)(4) (2001) (Repl. Vol. 2010),

(a) Release on probation is conditioned upon the following:

. . . .

(4) That in every case wherein the probationer has been convicted of an offense defined in section twelve [§ 61-8-12], article eight, chapter sixty-one of this code or article eight-b [§§ 61-8B-1 et seq.] or eight-d [§§ 61-8D-1 et seq.] of said chapter, against a child, the probationer may not live in the same residence as any minor child, nor exercise visitation with any minor child and has no contact with the victim of the offense: Provided, That the probationer may petition the court of the

(continued...)

13

divorce order similarly prohibited Father from visiting with his child, although it, also,

permitted Father to request future modification of such ruling.  In this regard, the court

ordered:

> Due to the fact [Father] is incarcerated and when released will be a registered sex offender . . . , it is in the best interest of the child that [Father] is granted no visitation with the child at this time.
>
> The Court grants leave to [Father] that after he is released from incarceration, that he can petition this Court for a modification of this Parenting Plan and seek supervised visits with his [child].

However, since Father's release from incarceration in October 2009, he has not

petitioned these courts to excuse him from either his supervised release conditions or the

parties' final divorce decree to allow him to exercise supervised visitation with his child.

Thus, while these conditions may have prevented him from visiting his child in the first

instance, *see* W. Va. Code § 48-22-306(a)(2), Father's failure to request that these conditions

---

[6](...continued)
circuit wherein he or she was convicted for a modification of this term and condition of his or her probation and the burden rests upon the probationer to demonstrate that a modification is in the best interest of the child[.]

Since Father's sentencing and release from incarceration, this statute has been amended; however such statutory changes do not materially alter the version of the statute that is applicable to the case *sub judice*.  *Compare* W. Va. Code § 62-12-9(a)(4) (2013) (Supp. 2013) *with* W. Va. Code § 62-12-9(a)(4) (2001) (Repl. Vol. 2010).

be lifted precludes him from claiming that there exist "compelling circumstances" to justify his failure to visit or otherwise communicate with his child. *See* W. Va. Code § 48-22-306(d). Moreover, Father has not contended that he was unaware of the child's location, financially unable to visit his child, or that Mother or Stepfather had prevented him from establishing or maintaining such contact as contemplated by W. Va. Code § 48-22-306(a)(2) to provide justification for a parent's failure to communicate or otherwise have contact with his/her child. Based upon Father's complete lack of contact with his child, during both the statutory six-month period required by W. Va. Code § 48-22-306(a)(2) and the past nine years, we conclude that the petitioners have presented ample evidence to prove the second factor of the statutory presumption of abandonment. *See* W. Va. Code § 48-22-306(a)(2). We further find that Father has not presented evidence of any "compelling circumstances" that would have prevented him from visiting or communicating with his child because he has not attempted to avail himself of the remedies that could have permitted him to exercise supervised visitation with his child. *See* W. Va. Code § 48-22-306(d).

Because the elements of the statutory presumption of abandonment set forth in W. Va. Code § 48-22-306 have been satisfied in this case, neither Father's consent to the requested stepparent adoption nor his relinquishment of his parental rights to his child is

required in this case.[7]  *See* W. Va. Code § 48-22-301(b)(2).  Accordingly, we reverse the circuit court's order denying the requested stepparent adoption and remand this case for further proceedings consistent with this opinion.  On remand, the circuit court is directed to permit the requested stepparent adoption once it has determined that the requirements of W. Va. Code § 48-22-701 (2001) (Repl. Vol. 2009)[8] have been satisfied.  Moreover, due to

---

[7]In light of our finding that the statutory presumption of abandonment has been met in this case, we need not consider the alternative theories upon which the petitioners base their claim for relief, *i.e.*, the statutory definition of abandonment contained in the adoption statutes or the termination of Father's parental rights upon a finding of parental unfitness. *See* W. Va. Code § 48-22-102 (2001) (Repl. Vol. 2009) (defining "abandonment"); Syl., *State ex rel. Kiger v. Hancock*, 153 W. Va. 404, 168 S.E.2d 798 (1969) ("A parent has the natural right to the custody of his or her infant child and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment, or other dereliction of duty, or has waived such right, or by agreement or otherwise has permanently transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts.").

[8]W. Va. Code § 48-22-701 (2001) (Repl. Vol. 2009) governs adoption proceedings generally and provides, in subsection (a), as follows:

> (a) When the cause has matured for hearing but not sooner than six months after the child has resided continuously in the home of the petitioner or petitioners, the court shall decree the adoption if:

> (1) It determines that no person retains parental rights in such child except the petitioner and the petitioner's spouse, or the joint petitioners;

> (2) That all applicable provisions of this article have been complied with;

> (3) That the petitioner is, or the petitioners are, fit persons to adopt the child; and

(continued...)

16

the length of time that the instant matter has been pending, the child has now attained the age of twelve. Therefore, on remand, the circuit court is further directed to obtain the child's consent to the proposed stepparent adoption. *See* W. Va. Code § 48-22-301(f) ("If the child to be adopted is twelve years of age or over, the consent of the child is required to be given in the presence of a judge of a court of competent jurisdiction, unless for extraordinary cause, the requirement of such consent is waived by the court."). Finally, during the proceedings on remand, the circuit court is instructed to fully consider the child's stated reasons for requesting the proposed name change incident to said adoption and to grant the requested name change if the court finds it to be in the child's best interests to do so. *See* W. Va. Code § 48-22-701(d) (observing that court, in final order of adoption, shall "recit[e] . . . the name by which the child shall thereafter be known"); Syl. pt. 4, *In re Adoption of Jon L.*, 218 W. Va. 489, 625 S.E.2d 251 (2005) ("An adoptive parent may, incident to an adoption proceeding, change his/her adopted child's name to reflect the new adoptive relationship. However, in the case of a stepparent adoption where the adoptive parent is married to the child's parent, the child's parent must assent to the proposed name change.").

---

[8](...continued)
     (4) That it is in the best interests of the child to order such adoption.

## IV.

## CONCLUSION

For the foregoing reasons, the April 18, 2013, order of the Circuit Court of Harrison County is hereby reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.