## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: The Adoption of T.B.**

**No. 17-0363** (Cabell County16-A-70)

**FILED**

**February 2, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner T.F.,[1] pro se, appeals the March 8, 2017, order of the Circuit Court of Cabell County granting the petition of Respondents D.M. and F.M., the paternal grandmother and step-grandfather, to adopt the infant child, T.B., based on a finding of abandonment by petitioner, the biological mother. Respondents, by counsel Jacquelyn Stout Biddle, filed a response in support of the circuit court's order.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

T.B. was born in 2013 to petitioner and Respondent D.M.'s son. The couple never married. According to petitioner, T.B.'s meconium tested positive for cocaine at birth.[2] Subsequently, on June 9, 2015, Respondent D.M. filed a petition in the Family Court of Cabell County to be appointed T.B.'s guardian. The family court granted the petition and appointed Respondent D.M. as T.B.'s guardian by order entered on October 22, 2015. In its order, the family court found that T.B's father was incarcerated at the time and that petitioner "has had no contact with [T.B.] or [her guardian ad litem] since the beginning of [the guardianship] proceedings" on June 9, 2015.

Petitioner was previously granted supervised visitation with T.B. the first Saturday of every month. According to petitioner, her last visit with T.B. occurred at respondents' home in

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]Meconium is defined as "a material that collects in the intestines of a fetus and forms the first stools of a newborn." *Harrison v. Davis*, 197 W.Va. 651, 654 n.2, 478 S.E.2d 104, 107 n.2 (1996) (quoting *Mosby's Medical and Nursing Dictionary* 691-92 (2nd ed. 1986)).

April of 2015. The parties dispute whether petitioner overdosed on drugs during the last visit. Petitioner stayed up late packing the preceding night because she was going to move to a new residence. When petitioner arrived at respondents' home the following day, Respondent D.M. suspected that petitioner was high on drugs. However, Respondent D.M. allowed petitioner to come into the home because Respondent D.M. "wanted to give her a chance." According to petitioner, she just fell asleep on the sofa, but Respondent D.M. believed that petitioner had overdosed and called 911. When paramedics arrived, petitioner refused medical treatment, but allowed her blood pressure to be taken. Petitioner asserts that she did not overdose because her blood pressure was normal.

From September 11, 2015, to December 14, 2016, petitioner was either incarcerated or on home confinement. Respondents filed a petition to adopt T.B. in the Circuit Court of Cabell County on December 20, 2016. Petitioner and respondents appeared at the adoption hearing on February 24, 2017. At the beginning of the hearing, the presiding judge advised the parties that he knew T.B.'s father and knew that he had recently died. Petitioner asked the judge to recuse himself, alleging that he had a personal relationship with respondents through T.B.'s father. The judge denied petitioner's request, explaining that he knew T.B.'s father because he criminally prosecuted T.B.'s father in his former job.[3]

Both petitioner and Respondent D.M. testified at the adoption hearing that the family court denied a request by petitioner to have her visitation with T.B. reinstated. Petitioner explained that the family court ruled that "they were going to leave things the way they were because [Respondent D.M.] assumed that I was high at her house at that last visit." Because of the parties' dispute regarding petitioner's last visit with T.B., petitioner testified that respondents wished that she no longer come to their home. Respondent D.M. testified that petitioner did not have visits with T.B. after April of 2015 because "[w]e never heard from her again."

Petitioner testified that she sent T.B. letters during her incarceration, but admitted that she had no documentation of the same. Petitioner further testified that she sent Respondent D.M. two Facebook or text messages with regard to restarting her visitation with T.B. Petitioner stated that

---

[3]On appeal, petitioner contends that both the judge and the court reporter had conflicts of interest because Respondent F.M. is a retired law enforcement officer in Cabell County Furthermore, petitioner alleges that the February 24, 2017, adoption hearing transcript contains a discrepancy in the testimony regarding whether T.B.'s father was doing well in drug court. Taking the alleged discrepancy first, we find that such discrepancy goes to the parental fitness of T.B.'s father, which was not an issue at the adoption hearing given his death. Second, with regard to petitioner's argument that there were multiple conflicts of interest, we find that the only alleged conflict raised by petitioner at the adoption hearing was based on the judge's familiarity with T.B.'s father. Therefore, we address only that alleged conflict in this decision. *See* Syl. Pt. 2, *Sands v. Sec. Trust Co.*, 143 W.Va. 522, 102 S.E.2d 733 (1958) (holding that "[t]his Court will not pass on a non[-]jurisdictional question which has not been decided by the trial court in the first instance").

proof of those messages was on her cell phone, but never provided the phone or other substantive evidence to the circuit court for review. Moreover, petitioner testified that she would be on parole from the West Virginia Division of Corrections until December of 2017.[4] Petitioner confirmed that she was pregnant again and unemployed.[5] Petitioner testified that child support for T.B. was last withheld from her paycheck at "the end of 2014."

By order entered on March 8, 2017, the circuit court found that petitioner's consent to T.B.'s proposed adoption was not required because T.B. was abandoned by petitioner pursuant to West Virginia Code § 48-22-306. First, the circuit court found that petitioner failed to financially support T.B. Second, the circuit court found that petitioner failed to visit or otherwise communicate with T.B. for a period of at least six months prior to the filing of the adoption petition and that respondents did not prevent petitioner from doing so. Also, the circuit court found that respondents were of good moral character and financially and physically able to care for T.B. Accordingly, the circuit court found that it was in T.B.'s best interests to be adopted by respondents and granted respondents' petition for adoption.

Petitioner appeals from the circuit court's March 8, 2017, order granting respondents' petition for adoption. In syllabus point 1 of *In Re: Adoption of C.R.*, 233 W.Va. 385, 758 S.E.2d 589 (2014), we held as follows:

> "In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syllabus point 2, *Walker v. West Virginia Ethics Commission*, 201 W.Va. 108, 492 S.E.2d 167 (1997).

On appeal, petitioner argues that she was not treated fairly at the February 24, 2017, adoption hearing. *See State ex rel. Peck v. Goshorn*, 162 W.Va. 420, 422, 249 S.E.2d 765, 766 (1978) (finding that the concept of fundamental fairness is synonymous with due process of law). First, petitioner contends that the judge had a conflict of interest because of a personal relationship with respondents through T.B.'s father. We find that the hearing transcript belies petitioner's contention given that the judge clearly explained that he knew T.B.'s father not due to a personal relationship, but because he criminally prosecuted T.B.'s father in his former job. Therefore, we conclude that the judge did not err in denying petitioner's request for his recusal.

---

[4]In response to a question by the circuit court, petitioner advised that her convictions were for forgery, conspiracy, and shoplifting, third offense.

[5]Petitioner was pregnant with her fifth child. Of petitioner's four older children, one was dead and none of the others were in petitioner's custody.

Second, petitioner contends that the circuit court was unwilling to consider her evidence that she did not abandon T.B. Respondents counter that petitioner did not present any evidence at the adoption hearing other than her self-serving testimony. We agree with respondents. Though petitioner testified that she sent T.B. letters during her incarceration, she admitted that she had no documentation of the same. Petitioner further testified that her cell phone contained evidence that she sent Respondent D.M. two Facebook or text messages with regard to restarting her visitation with T.B. However, petitioner never provided the phone or other substantive evidence to the circuit court for review. The circuit court had no duty to consider evidence that petitioner failed to proffer. Finally, the circuit court's ruling that petitioner abandoned T.B. does not indicate that the court ignored her testimony at the adoption hearing. Rather, the circuit court was entitled to find that petitioner's testimony was not credible. *See State v. Guthrie*, 194 W.Va. 657, 669 n. 9, 461 S.E.2d 163, 175 n. 9 (1995) (finding that the evaluation of witnesses' credibility is the exclusive function of the trier of fact). Therefore, we reject petitioner's contention that the circuit court was unwilling to consider her evidence and conclude that the circuit court provided her an adequate opportunity to be heard. *See Goshorn*, 162 W.Va. at 422, 249 S.E.2d at 766 (finding that "[t]he fundamental requisite of due process of law is the opportunity to be heard") (Internal quotations and citations omitted.).

Moreover, respondents argue that sufficient evidence exists to support the circuit court's finding that petitioner abandoned T.B. We concur. West Virginia Code § 48-22-301(b)(2) provides that a parent's relinquishment of her parental rights and/or consent to her child's adoption is not required if the court finds that she "has abandoned the child as set forth in [West Virginia Code §§ 48-]22-306." In syllabus point 2 of *Joshua D.R. v. David A.M.*, 231 W.Va. 545, 746 S.E.2d 536, 537 (2013), we held that "[t]he standard of proof required to support a court order . . . terminating parental rights to custody of minor children is clear, cogent and convincing proof." (Internal quotations and citations omitted.).

To establish abandonment by a biological parent, West Virginia Code § 48-22-306(a), provides, in pertinent part, as follows:

(a) Abandonment of a child over the age of six months shall be presumed when the birth parent:

(1) Fails to financially support the child within the means of the birth parent; and

(2) Fails to visit or otherwise communicate with the child when he or she knows where the child resides, is physically and financially able to do so and is not prevented from doing so by the person or authorized agency having the care or custody of the child: Provided, That such failure to act continues uninterrupted for a period of six months immediately preceding the filing of the adoption petition.

Once the adoptive parents have established the presumption of abandonment, the biological parent has the opportunity to rebut the presumption. West Virginia Code § 48-22-306(d) provides that the biological parent "shall have the opportunity to demonstrate to the court the existence of

compelling circumstances preventing said parent from supporting, visiting or otherwise communicating with the child[.]"

With regard to the first requirement set forth in West Virginia Code § 48-22-306(a) to establish abandonment, petitioner testified that child support for T.B. was last withheld from her paycheck in 2014. In *C.R.*, we found that involuntary payment of child support through wage withholding was insufficient to defeat a finding that a parent failed to financially support their child. 233 W.Va. at 389, 758 S.E.2d at 593. Also, though petitioner testified that she was incarcerated for a substantial period of time during 2015 and 2016, as we found in *C.R.*, "incarceration does not relieve a parent of the duty to provide financial support for his/her child." *Id.* at 390, 758 S.E.2d at 594. Therefore, we conclude that the circuit court properly found that petitioner failed to financially support T.B., establishing the first requirement of the statutory presumption of abandonment.

The parties dispute whether the second requirement to establish abandonment pursuant to West Virginia Code § 48-22-306(a) was proven. It is not entirely clear whether petitioner argues that a prior court order prohibited her from going to respondents' home or contacting them by phone, or merely asserts that they did not wish her to return to their home or telephone them. However, the only order to which petitioner might possibly be referring to is the family court's October 22, 2015, order granting Respondent D.M's petition to be appointed T.B.'s guardian. Respondents attached the October 22, 2015, order as an exhibit to their adoption petition; therefore, that order is in the record of this case. Upon review of the October 22, 2015, order, we find that the family court did not prohibit petitioner from going to respondents' home or contacting them by phone.

Rather, petitioner testified that respondents wished that she no longer come to their home given the parties' dispute as to whether petitioner overdosed during her last visit with T.B. in April of 2015. We find that respondents' preference in that regard does not excuse petitioner's lack of visitation or communication with T.B. *See C.R.*, 233 W.Va. at 391, 758 S.E.2d at 595 (making the same finding with regard to a father who was discouraged, but not forbidden, from visiting or otherwise communicating with his child). Significantly, Respondent D.M. testified that she suspected that petitioner was high on drugs at the beginning of the April of 2015 visit, but still let petitioner into the house because Respondent D.M. "wanted to give her a chance." Moreover, Respondent D.M. testified that petitioner did not have visits with T.B. after April of 2015 because "[w]e never heard from her again." As the trier of fact, the circuit court, which observed petitioner and Respondent D.M. testifying and was able to judge the demeanor of each, was entitled to find that Respondent D.M. was the more credible witness. *See Guthrie*, 194 W.Va. at 669 n.9, 461 S.E.2d at 175 n.9. Therefore, we find that the circuit court properly determined that petitioner failed to visit or otherwise communicate with T.B. for a period of at least six months prior to the filing of the adoption petition and that respondents did not prevent petitioner from doing so. Accordingly, we conclude that the circuit court properly found that the presumption of abandonment was established pursuant to West Virginia Code § 48-22-306(a).

Finally, we find that the circuit court addressed petitioner's right to rebut the statutory presumption of abandonment pursuant to West Virginia Code § 48-22-306(d). At the February 24, 2017, adoption hearing, after the circuit court made its finding on the record that petitioner

abandoned T.B. pursuant to West Virginia Code § 48-22-306(a), petitioner inquired whether she had the opportunity for an improvement period like in child abuse and neglect cases. The circuit court explained that, because this proceeding was an adoption case, petitioner was allowed to rebut the statutory presumption of abandonment, but found that she did not rebut it based on the evidence presented at the hearing. In *C.R.*, we found that prior orders requiring court permission before the father had visitation with his or any other child could constitute "compelling circumstances" pursuant to West Virginia Code § 48-22-306(d) sufficient to rebut the statutory presumption, but that the father failed to present any evidence that he was prevented from seeking the permission that was required to visit his child. 233 W.Va. at 391-2, 758 S.E.2d at 595-6. Similarly, assuming arguendo that a prior court order prohibited petitioner from going to respondents' home or contacting them by phone, there is no evidence that petitioner was prevented from seeking a modification of that order. Therefore, we conclude that the circuit court did not abuse its discretion in granting respondents' petition to adopt T.B. based on a finding pursuant to West Virginia Code § 48-22-306 that petitioner abandoned her child.

For the foregoing reasons, we affirm the circuit court's March 8, 2017, order granting respondents' petition to adopt the infant child T.B.

Affirmed.

**ISSUED**: February 2, 2018

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker