# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **The Child of**

**Kimberly C.,**
**Petitioner Below, Petitioner**

**vs)   No. 18-0322** (Kanawha County 10-D-1025)

**Joshua L.,**
**Respondent Below, Respondent**

**FILED**

**June 17, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Kimberly C.,[1] pro se, appeals the January 17, 2018, order of the Circuit Court of Kanawha County refusing petitioner's appeal from an August 8, 2017, amended final order entered by the Family Court of Kanawha County. Respondent Joshua L., by counsel Charles R. Webb, filed a response in support of the circuit court's order. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal.[2] The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties never married but have a nine-year-old child together. According to petitioner's

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]The appellate record did not include the recordings of the family court hearings in this case. Accordingly, pursuant to Rule 6(b) of the West Virginia Rules of Appellate Procedure, we directed the family court to transmit to this Court all available hearing recordings. On February 7, 2017, this Court received recordings for hearings occurring on May 14, 2012, September 24, 2013, January 14, 2014 (two hearings), May 7, 2015, and April 7, 2016. We have reviewed the hearing recordings and hereby supplement the record with the recordings.

1

hearing testimony, the parties met when petitioner was fifteen years old and respondent was nineteen years old and petitioner gave birth to the parties' child before her seventeenth birthday. Currently, the parties dispute the allocation of parenting time.

At a January 14, 2014, hearing, the family court's bailiff received "a capias for [petitioner's] arrest . . . for some unknown criminal violations which apparently had occurred in Kanawha County, West Virginia, for which she failed to appear in [m]agistrate [c]ourt." In a February 13, 2014, order, the family court found that:

> [f]urther indication of some of [petitioner's] lack of sound decision[-]making consists of the fact that since July of 2011, through September 2013, [petitioner] has had criminal charges filed against her more than [t]wenty (20) times[,] which consists of a large number of various charges including, but not limited to, shoplifting, leaving the scene of an accident, [driving under the influence ("DUI")], contributing to the delinquency of a minor, possession of marijuana paraphernalia, obstructing an officer, battery, possession of marijuana, destruction of property, consumption of alcohol under the age of twenty-one, possession of a controlled substance[,] and public intoxication.

At a May 7, 2015, hearing, the parties proposed an agreement to share parenting time on the following schedule: (1) petitioner has parenting time from Friday at 5:00 p.m. to Sunday at 5:00 p.m. until the child is out of school for the summer; and (2) during the summer, petitioner has parenting time Monday and Tuesday and respondent has parenting time Wednesday and Thursday and the parties would alternate weekends. The agreement required petitioner to obtain her driver's license and to undergo a psychological evaluation. The parties further agreed that neither would pay child support, that the child's guardian ad litem ("GAL") remain involved in the case until its conclusion, and that the case be tentatively set for a final hearing during July of 2015. The parties each testified that the agreement was in the child's best interests. The GAL concurred that the child's best interests were met by the agreement. Accordingly, the family court adopted the agreement and directed petitioner's attorney to prepare the necessary order. However, no written order was entered, and the parties did not abide by the agreement. The child lived with respondent, while petitioner also sometimes stayed at respondent's residence.

On March 17, 2016, respondent filed a petition for modification and the parties appeared for a hearing on April 7, 2016. Respondent alleged that petitioner was engaging in criminal activity and drug use and requested that petitioner's parenting time be restricted. Petitioner denied many of respondent's allegations, but admitted that she was charged with daytime burglary for allegedly breaking into respondent's residence. By order entered April 7, 2016, the family court ordered that petitioner shall have (1) visitation with the child on Sunday at 1:00 p.m. to 4:00 p.m., supervised by respondent's mother; (2) nightly telephone calls at 7:30 p.m. with the child who must "get on [the] phone"; and (3) permission to eat lunch with the child at the child's school once per week with twenty-four hour notice to respondent. Also, the family court directed the GAL to conduct a renewed investigation into the parties' circumstances. However, the GAL later advised the family court that petitioner "failed and/or refused to cooperate with the [GAL's] directives." Accordingly, in a February 7, 2017, order, the family court reiterated the parenting schedule set out in its April

7, 2016, order and further directed that the parties have equal access to the child's medical, educational, and other records. Finally, the family court designated its February 7, 2017, order as a final appealable order.

Petitioner did not receive a copy of the February 7, 2017, order because it was sent to an address of an attorney who did not represent her. After becoming aware of the mistake, the family court entered an amended final order on August 8, 2017, setting forth the same provisions as the February 7, 2017, order but directing that a copy be sent to a personal address for petitioner. However, petitioner did not receive the amended final order until November of 2017 when she updated her mailing address with the family court. On November 15, 2017, petitioner filed an appeal from the amended final order, arguing that her due process rights were violated when she did not timely receive a copy of the order. By order entered January 17, 2018, the circuit court attributed the family court's failures to send the final order and amended final order to a current address for petitioner to her not fulfilling "[her] obligation to keep [that] court updated with her correct address," but found that, in the interests of justice, there was good cause to allow her a late appeal from the amended final order. Given its good cause finding, the circuit court further found that petitioner could not show that she suffered any prejudice from her late receipt of the amended final order. On the merits of the appeal, the circuit court found that petitioner had no substantive basis on which she could challenge the amended final order. Accordingly, the circuit court refused the appeal.

In the syllabus of *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004), we held that

[i]n reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

On appeal, petitioner raises a litany of alleged incidents between the parties, but fails to explain how any of those incidents relate to the issue before the family court (the most recent allocation of parenting time) or the issue before the circuit court (the late receipt of the amended final order). We find that only those two issues are properly before this Court on appeal.

Petitioner argues that her due process rights were violated when she did not timely receive a copy of the amended final order. "The due process of law guaranteed by the State and Federal Constitutions, when applied to procedure in the courts of the land, requires both notice and the right to be heard." Syl. Pt. 3, *Brittany S. v. Amos F.*, 232 W.Va. 692, 753 S.E.2d 745 (2012) (quoting Syl. Pt. 2, *Simpson v. Stanton*, 119 W.Va. 235, 193 S.E. 64 (1937)); *State ex rel. Peck v. Goshorn*, 162 W.Va. 420, 422, 249 S.E.2d 765, 766 (1978) (same). Here, petitioner does not allege that she did not receive notice of any of the hearings in this case or that she failed to appear at a hearing due to a lack of notice. Therefore, we find that the sole basis for petitioner's argument is the late receipt of the amended final order. We concur with the circuit court's finding that petitioner cannot show that she suffered any prejudice because the court found that there was good cause to allow her a late appeal from the amended final order. Accordingly, we conclude that the circuit

3

court properly rejected this issue as a ground for reversing the amended final order.

We now address the merits of the appeal. Petitioner argues that she is entitled to "full custody" of the child. We disagree. "Although parents have substantial rights that must be protected, the primary goal in cases involving . . . family law matters . . . must be the health and welfare of the children." Syl. Pt. 3, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996); *see also Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) (finding that "the best interests of the child is the polar star by which decisions must be made which affect children"). Here, the record demonstrates that petitioner has a history of poor decision-making. At a January 14, 2014, hearing, the family court's bailiff received a capias for petitioner's arrest given her failure to appear in magistrate court on criminal charges. In a February 13, 2014, order, the family court found that, from July of 2011 through September of 2013, petitioner had criminal charges filed against her more than twenty times, including shoplifting, DUI, and contributing to the delinquency of a minor. At an April 7, 2016, hearing, while petitioner denied many of respondent's allegations of continued criminal activity and drug use, petitioner admitted that she was charged with daytime burglary for allegedly breaking into respondent's residence. Finally, after the family court ordered the GAL to conduct a renewed investigation following the April 7, 2016 hearing, petitioner "failed and/or refused to cooperate with the [GAL's] directives." Therefore, we find that the record does not support petitioner's argument that she is entitled to "full custody" of the child, but, conversely, provides support for the family court's decision to restrict her parenting time to supervised visitation. We agree with respondent's position that petitioner has no substantive basis on which she can challenge the family court's amended final order. Accordingly, we conclude that the circuit court properly refused petitioner's appeal from the amended final order.

For the foregoing reasons, we affirm the circuit court's January 17, 2018, order refusing petitioner's appeal from the family court's August 8, 2017, amended final order.

Affirmed.

**ISSUED:** June 17, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Evan H. Jenkins
Justice John A. Hutchison

**CONCURRING, AND WRITING SEPARATELY:**

Justice Tim Armstead

4

Armstead, J., concurring:

The petitioner's extensive criminal history is troubling. As noted in the majority opinion, the petitioner had twenty criminal charges filed against her between July of 2011 and September of 2013. These charges included battery, possession of marijuana, DUI, shoplifting and contributing to the delinquency of a minor. The petitioner also admitted that she had been charged with daytime burglary in 2016.

This Court has observed that "[t]here cannot be too much advocacy for children." *State ex rel. Diva P. v. Kaufman*, 200 W.Va. 555, 570, 490 S.E.2d 642, 657 (1997) (Workman, C.J., concurring). Indeed, this Court has made it abundantly clear that in cases involving abused and neglected children, the "polar star test [is] looking to the best interests of our children and their right to healthy, happy productive lives[.]" *In re Edward B.*, 210 W.Va. 621, 632, 558 S.E.2d 620, 631 (2001). *See also In re D.P.*, 230 W.Va. 254, 257 737 S.E.2d 282, 285 (2012) ("It is axiomatic that, in any contest involving the care and custody of a minor, 'the welfare of the child is the polar star by which the discretion of the court will be guided.' Syllabus Point 2, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, 47 S.E.2d 221 (1948).").

Petitioner's extensive criminal history raises significant concerns about the welfare of the child at issue in this case. Based on these concerns, I urge the DHHR to conduct a thorough inquiry into whether it is in the child's best interest to continue to have visitation with the petitioner.