STATE *ex rel.* CARRIE ANN HOBBS KIGER

*v.*

COZETTE HANCOCK *and* ALFRED HOBBS

(No. 12841)

Submitted July 1, 1969.                   Decided July 22, 1969.

*Arch J. Alexander, Jr.,* for relator.

*Carroll W. Casto, R. Michael Shaw,* for respondents.

HAYMOND, PRESIDENT:

In this original habeas corpus proceeding, instituted in this Court in June 1969, the petitioner, Carrie Ann Hobbs Kiger, seeks a writ to require the defendants, Cozette Hancock and Alfred Hobbs, to deliver the custody of Stephen Foster Hobbs, 11 years of age, and Robin Rena Hobbs, 10 years of age, infant children of the petitioner, Carrie Ann Hobbs Kiger and Orville Hobbs, formerly her husband, now deceased, who lived together as husband and wife from the date of their marriage November 14, 1956 until their separation in 1962. These children, by virtue of an agreement between the petitioner and her husband, were committed to the custody of their father, Orville Hobbs, and his custody of them was approved by the Domestic Relations Court of Kanawha County in the divorce proceeding of *Carrie Ann Hobbs* v. *Orville Hobbs,*

by decree entered March 4, 1964, and pursuant to that decree the children remained in his custody until his death in March 1969. After the death of Orville Hobbs the defendant Cozette Hancock, a sister of Orville Hobbs and an aunt of the children, was appointed their guardian by the County Court of Mason County, West Virginia, on March 11, 1969, and she is now acting as their guardian. By order entered March 21, 1969, by the Circuit Court of Mason County, the custody of the children was awarded by that court to the defendant Cozette Hancock, who resides with her father, the defendant Alfred Hobbs, who is also the father of Orville Hobbs, deceased, and the grandfather of the children, at his home on Star Route, in the rural community of Gallipolis Ferry, in Mason County, West Virginia. The relief sought by the petitioner in this proceeding is to obtain the custody of the children from the defendants, with whom they now live, to terminate the guardianship of the children and to require Cozette Hancock, as their guardian, to deliver the estate and assets of the children in her possession to the petitioner.

Upon the petition and its exhibits this Court on June 16, 1969, issued a writ returnable July 1, 1969. On the return day of the writ the defendants filed their return and produced the children in open court and this proceeding was submitted for decision upon the petition and its exhibits, the return of the defendants, the depositions in behalf of the respective parties, the exhibits with the depositions, and the briefs and the oral arguments of counsel.

The question to be determined involves the custody and care of children of tender age and is one of the most perplexing and difficult to be decided by a court, as the result of the decision will materially affect the future welfare and happiness of the children. The controlling principle in every such case is the welfare of the child and this Court has repeatedly said that in a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided. *Holstein* v. *Holstein,* 152 W. Va. 119, 160 S. E.2d 177; *Whiteman* v. *Robinson,* 145 W. Va. 685, 116 S. E.2d

691; *State ex rel. Harmon* v. *Utterback,* 144 W. Va. 419, 108 S. E.2d 521; *Lucyk* v. *Brawner,* 144 W. Va. 690, 110 S. E. 2d 739; *Stout* v. *Massie,* 140 W. Va. 731, 88 S. E.2d 51; *Smith* v. *Smith,* 138 W. Va. 388, 76 S. E.2d 253; *Pugh* v. *Pugh,* 133 W. Va. 501, 56 S. E.2d 901, 15 A. L. R.2d 424; *State ex rel. Lipscomb* v. *Joplin,* 131 W. Va. 302, 47 S. E.2d 221; *Pukas* v. *Pukas,* 129 W. Va. 765, 42 S. E.2d 11.

In determining the question of custody in this proceeding it is necessary to consider the character, the conduct and the ability of the petitioner, the natural mother of the children, to support and care for them and to provide them with a proper and suitable home. On that point the evidence shows that after her divorce from her former husband on March 4, 1964, the petitioner was unable financially to have their custody and to support them. During that period and until her marriage to her present husband on August 16, 1964, she worked as a waitress at different restaurants in Fayetteville, North Carolina, where she first became acquainted with her present husband. She is 28 years of age. Her husband is a master sergeant in the United States Army and is presently stationed at the Yuma Proving Grounds, a military post at Yuma, Arizona. He is the father, by a previous marriage, of two boys of the ages of 13 and 14 years who make their home with the petitioner and her husband. Her husband was stationed in Thailand for a period of about 25 months where he and the petitioner made their home. They returned from Thailand on April 9 of this year and they are now residing at the military post in Yuma, Arizona. Her husband's salary is approximately $670.00 per month and he is presently furnished a home by the government on the military reservation. Their present home consists of a 5-room house with 2 bathrooms and a large lawn. It also contains a large storage room and has a patio and carport nearby. It is one of a number of homes located in a circle in the center of which there is a large playground for children. The house is electrically heated and air-conditioned. There is a public school about 2 blocks from the house and there are other nearby recrea-

tional facilities, such as bowling lanes, theaters, swimming pool, craft shop, gymnasium and a baseball field for the use of children.

The petitioner and her husband are of good moral character, are fairly well educated, and petitioner's husband wishes her to have the custody and care of the children and he is willing to support them as if they were his own. Though the petitioner agreed that the custody of the children should be with her former husband until his death, and though because of her inability to support them before her marriage to her present husband and her inability to be with them because of his assignment in Thailand until April of this year, there is no indication that she ever intended to relinquish permanent custody of her children or that she has abandoned them. She testified that she loves her children and desires to have their custody and care.

The defendant Cozette Hancock, 43 years of age, is married but separated from her husband who makes his home in Florida. She is the mother of four children, three daughters aged 17 years, 13 years and 11 years, and one son aged 12 years, and is an aunt of the children of the petitioner. They make their home with her in a 5-room house located on a sixty-five acre farm on Pleasant Ridge Road, Gallipolis Ferry, Mason County, West Virginia, in which her father Alfred Hobbs, a widower 81 years of age, and her sister Florence Hobbs also make their home. The 5-room house has only 3 bedrooms. One bedroom is occupied by the grandfather and Stephen Foster Hobbs; and the other 7 persons share the other 2 bedrooms. The home is not equipped with running water and it has no inside toilet facilities but there is a telephone in the house. The farm is owned by Claude E. Hobbs, a brother of Cozette Hancock and a son of Arthur Hobbs, and its owner permits them to occupy it free of rent.

The children of the petitioner attend the local public school which is located about 3 miles from their home. They have just completed their fifth grade studies and

will be in the sixth grade of the school during the next school year. The children also attend the Christian Church and Sunday School. They are active in school events and have a satisfactory school record. Stephen has a pet dog and Robin looks after the chickens on the farm. Stephen participates in school athletics and is a member of its football team.

The grandfather has a monthly income of $115.00 from the United Mine Workers Fund and a monthly social security benefit of $79.90, or a total monthly income of $194.90.

Cozette Hancock receives $100.00 per month support money from her husband and as guardian of the children of the petitioner she receives monthly payments of $48.40 social security benefits and $28.00 veterans administration benefits or a total of $76.40 each month for each child. She is interested in the education of the children and occasionally attends meetings of the local Parent-Teacher Association. The family life and the moral surroundings of the children are typical of the family life in an isolated rural community of that section of West Virginia. The children have no medical or hospital insurance and the nearest available doctor is located in Point Pleasant, which is about 12 miles from their home. Cozette Hancock, her sister, and her father are fond of the children of the petitioner and they are fond of their aunts and their grandfather, they are well and kindly treated by their aunts and their grandfather, and the children of the petitioner and the other children in the home are fond of each other and get along well together. The children of the petitioner have lived in their present home since 1961 when they were brought there by their father who lived there and had their custody until his death in March 1969. Both children enjoy normal good health and in testifying each expressed the desire to continue to reside in the home where they now live, although Robin indicated that she would also like to be with her mother. Good feeling exists between them and their mother but because of her absence from them in recent years there is not the

usual close relationship that normally exists between parent and child.

Section 7, Article 10, Chapter 44, Code, 1931, provides, to the extent here pertinent, that "Every guardian who is appointed as aforesaid, and gives bond when it is required, shall have the possession, care and management of his ward's estate, real and personal, and out of the proceeds of such estate shall provide for his maintenance and education; * * *. But the father or mother of any minor child or children shall be entitled to the custody of the person of such child or children, and to the care of his or their education. If living together, the father and mother shall be the joint guardians of the person of their minor child or children, with equal powers, rights and duties in respect to the custody, control, services, earnings, and care of the education of such minor child or children; and neither the father nor the mother shall have any right paramount to that of the other in respect to such custody, control, services or earnings, and care of the education of such minor child or children. If the father and mother be living apart, the court to which application is made for the appointment of a guardian, or before which any such matter comes in question, shall appoint, as guardian of the person of the minor child or children of such father and mother, that parent who is, in the court's opinion, best suited for the trust, considering the welfare and best interests of such minor child or children. * * *."

The right mentioned in the foregoing statute of the parent to the custody of his or her children, though not absolute, is founded on natural law and arises because the child is his or hers to care for and rear. *Whiteman v. Robinson,* 145 W. Va. 685, 116 S. E.2d 691; *Holstein v. Holstein,* 152 W. Va. 119, 160 S. E.2d 177; *Hoy v. Dooley,* 144 W. Va. 64, 105 S. E.2d 877; *Stout v. Massie,* 140 W. Va. 731, 88 S. E.2d 51; *State ex rel. Lipscomb v. Joplin,* 131 W. Va. 302, 47 S. E.2d 221; *Pukas v. Pukas,* 129 W. Va. 765, 42 S. E.2d 11; *State ex rel. Bennett v. Anderson,* 129 W. Va. 671, 41 S. E.2d 241; *Straughan v. Straughan,* 115 W. Va. 639, 177 S. E. 771; *State ex rel. Palmer v.*

*Postlethwaite,* 106 W. Va. 383, 145 S. E. 738; *Connor* v. *Harris,* 100 W. Va. 313, 130 S. E. 281; *Hurley* v. *Hurley,* 71 W. Va. 269, 76 S. E. 438; *Fletcher* v. *Hickman,* 50 W. Va. 244, 40 S. E. 371, 55 L. R. A. 896, 88 Am. St. Rep. 862; *Cunningham* v. *Barnes,* 37 W. Va. 746, 17 S. E. 308, 38 Am. St. Rep. 57; *Green* v. *Campbell,* 35 W. Va. 698, 14 S. E. 212, 29 Am. St. Rep. 843; *Rust* v. *Vanvacter,* 9 W. Va. 600. This right of a parent will be respected when it has not been transferred or abandoned. *Hoy* v. *Dooley,* 144 W. Va. 64, 105 S. E.2d 877; *Settle* v. *Settle,* 117 W. Va. 476, 185 S. E. 859; *Straughan* v. *Straughan,* 115 W. Va. 639, 177 S. E. 771; *Pierce* v. *Jeffries,* 103 W. Va. 410, 137 S. E. 651, 51 A. L. R. 1502; *Buseman* v. *Buseman,* 83 W. Va. 496, 98 S. E. 574; *Cunningham* v. *Barnes,* 37 W. Va. 746, 17 S. E. 308, 38 Am. St. Rep. 57. In order to separate a child from its parent on the ground of the unfitness of the parent there must be cogent and convincing proof of that fact. *Hoy* v. *Dooley,* 144 W. Va. 64, 105 S. E.2d 877; *Pierce* v. *Jeffries,* 103 W. Va. 410, 137 S. E. 651, 51 A. L. R. 1502; 14 Michie's Jurisprudence, Parent and Child, Section 7. In this case there is no such proof.

In *Whiteman* v. *Robinson,* 145 W. Va. 685, 116 S. E.2d 691, this Court quoted with approval this language from 46 C. J., Parent and Child, Section 11c: "A parent who is of good character and a proper person to have the custody of the child and is reasonably able to provide for it ordinarily is entitled to the custody as against other persons, and this rule applies although such others are much attached to the child, and the child is attached to them, and prefers to remain with them, and they are in all respects suitable to have the custody of the child and unable to support and care for it, or even though they are better able to afford the child material advantages. The state cannot, it has been said, interfere with the right of unoffending parents to the custody of their children merely to better the moral and temporal welfare of the latter." Similar statements are quoted with approval in the concurring opinion of Judge Lively in *State ex rel. Palmer* v. *Postlethwaite,* 106 W. Va. 383, 145 S. E.

738. In that case the father of an eleven year old boy was held to be entitled to his custody instead of his grandmother who had been permitted by the father to have custody of the child on a temporary basis and until the father was able to assume direct responsibility properly to care for and rear his child. In *State ex rel. West Virginia Department of Public Assistance* v. *See,* 145 W. Va. 322, 115 S. E.2d 144, the opinion contains this language: "We have never held that a parent or other person having legal right to custody of an infant may be deprived of such custody, absent any neglect, mistreatment or some voluntary act on the part of such parent or person." In the early case of *Rust* v. *Vanvacter,* 9 W. Va. 600, this Court held in point 6 of the syllabus that a father is the natural guardian of his infant child and in the absence of good and sufficient cause, such as ill usage, grossly immoral principles or habits, or want of ability, is entitled to its custody, care and education.

Under the foregoing authorities a parent has the natural right to the custody of his or her infant child and, unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment or other dereliction of duty, or has waived such right, or by agreement or otherwise has permanently transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts.

With respect to the right of a parent to the custody of his child as against any claim of any person other than a parent, as pointed out by Judge Lively in his concurring opinion in *State ex rel. Palmer* v. *Postlethwaite,* 106 W. Va. 383, 145 S. E. 738, "It would be a dangerous and perversive doctrine to hold that the mutual affections of the child and its temporary custodian should annul the parent's natural right to his offspring. Mutual affections nearly always spring up between a young child and its custodian even though there may be no blood relationship." The law does not recognize and this Court will not sanction any relationship which produces mutual affection between a

child and its temporary custodian and which leads to the annulment of a suitable parent's natural right to the custody, care and control of his child.

The evidence in this case shows that the petitioner is a suitable person to have the custody, care and control of her children, that she is fond of them, that she is a person of good moral character, that she is able and willing to provide support for and to educate her children, and that she is able now to provide a suitable home for them. The evidence further shows that she has never mistreated the children and that she has not, at any time, by agreement or otherwise, permanently transferred, relinquished or surrendered their custody to the defendants or any of them but that she merely consented to the custody of the children by their father until such time as the petitioner was able to support and care for and educate them. Of course, when the husband died his right to the custody of the children ended with his death and did not and could not pass or be transferred to any of the defendants.

The petitioner was not consulted about and had no notice of the appointment by the County Court of Mason County of Cozette Hancock as the guardian of the children and she was not a party to and had no notice of the proceeding in the Circuit Court of Mason County in which the custody of the children was awarded to Cozette Hancock and, in that situation, the petitioner is not precluded from asserting her parental right to the custody of her children.

Though a change of the present custody of the children will materially alter their present association and living conditions and cause some temporary unhappiness, disappointments and perhaps some loneliness, it is clear from the evidence that the transfer of the custody and care of the children from Cozette Hancock to the petitioner will materially promote their future welfare and happiness. In their new home they will have much better living conditions and more advantageous educational and

recreational facilities and be enabled to live in a much more suitable and desirable social environment.

It is well established that in controversies relating to the custody and care of children, the child, if he or she is of the age of discretion, should be consulted and due weight should be given to his or her wishes in the matter of custody and care. This has been done in this instance. See *Finnegan* v. *Finnegan,* 134 W. Va. 94, 58 S. E.2d 594; *Rust* v. *Vanvacter,* 9 W. Va. 600; Annotations I and II A 3, Child's Wishes as Factor in Awarding Custody, 4 A. L. R. 3d, pages 1399 and 1402-1409. Though the children expressed satisfaction with their present condition and indicated their preference to remain where they are instead of going to live with their mother, it is evident that because of their tender years and immaturity they are not capable of forming a considered and satisfactory judgment with respect to their future custody and care and their present wishes can not be given controlling force and effect in the circumstances of this case.

The evidence shows that the petitioner has the right to the relief for which she prays and this Court now holds that she is entitled to the immediate custody and care of her infant children, Stephen Foster Hobbs and Robin Rena Hobbs; and the defendants are ordered and directed forthwith to deliver her children to the custody of the petitioner and the defendant Cozette Hancock, as guardian of the children of the petitioner, is likewise ordered and directed to terminate promptly her guardianship of the infant children of the petitioner and to transfer and deliver to the petitioner, within twenty days from this date, all their moneys, assets and estate in her custody, control and possession.

*Writ awarded.*