*In Re*: THE MATTER OF THE SIMMONS CHILDREN

(No. 12891)

Submitted September 15, 1970.    Decided October 20, 1970.

*David G. Hanlon,* for appellant.

*Chauncey H. Browning, Jr.,* Attorney General, *James G. Anderson, III,* Assistant Attorney General, for appellee, Edwin F. Flowers, Commissioner, Department of Welfare.

BERRY, JUDGE:

This is an appeal by Eugene and Martha Simmons from a judgment of the Juvenile Court of Monongalia County of June 23, 1969, removing and transferring the custody of seven children of Eugene and Martha Simmons to the custody and control of the State Department of Welfare of West Virginia appointing said Department guardian of the children with full power and authority to consent to their adoption. The appeal was granted on November 3, 1969, and leave to move to reverse the judgment was granted on November 24, 1969. The case was set for argument at the January, 1970, regular term of this Court, but was eventually continued to the September, 1970, term at which time it was submitted for decision upon arguments and briefs of the parties.

A number of procedural and substantive questions are raised in the assignments of error, the most important of which are that the original petition instituting the proceeding in the Juvenile Court was defective, the failure to have the witnesses testifying before the Court sworn, the failure of the court to furnish a court reporter, the considering of matters in the social worker's reports to the court which were not introduced into evidence, the evidence introduced before the court did not support the judgment, the attaching to the "statement of evidence" an exhibit listing complaints which were not before the court at the hearing, the refusal to grant a rehearing, and the granting of the custody and control of the children to the Department of Welfare of West Virginia, with the power to allow them to be adopted without the termination of the parental rights.

The Simmons family, at the time of the institution of this proceeding, was living in sub-standard quarters in Monongalia County, and had lived in similar situations in other parts of Monongalia County, as well as in Taylor and apparently in Preston counties. The family was in the low-income bracket with the apparent difficulty to properly manage and supervise their living conditions. The record does not disclose the exact earnings of the father, but the brief of the attorney for the Simmonses indicates that his take-home pay was $375 a month.

This case had its inception by a child welfare worker of the State Department of Welfare, Mrs. Barbara Elliott, filing a petition in the Juvenile Court of Monongalia County, alleging that the seven Simmons children, with ages ranging from three to thirteen years of age, were neglected, because they were not receiving proper parental supervision and their school attendance was irregular. No copy of the petition was served on the parents but all members of the family, as well as other witnesses, received individual summonses to appear before the Juvenile Court.

The only record of the hearing, hereafter briefly summarized, is in the form of a "Statement of Evidence in Lieu of Transcript," which was written by the attorneys after the hearing, signed by them, and entered of record by the court, with certain objections filed thereto by the attorney for the parents.

Mrs. Elliott, the welfare worker, attempted to explain the purpose of the hearing, stating that it was based on complaints she had received. The attorney for the parents objected and requested that the rules of evidence be applied to this proceeding.

Harry Helman, who had lived in the same house as the Simmons family but on a different floor and had apparently had some difficulty with them, testified that he had heard the oldest girl use foul language and had seen her kissing and holding hands with her cousin, Jerry Louk, who visited the Simmons family for several days at a time. Lloyd Wolfe, who

lived across the street from the Simmons family, stated that he had seen the children drinking from a beer can but did not know what was in the can. The welfare worker testified that the witness Helman did not testify to the same thing he told her during her investigation. She stated that he had told her that he had seen the children drinking beer and vodka, and had seen Regina and her cousin, Jerry Louk, making love on a couch on the back porch. Wayne Tennant, Director of School Attendance in Monongalia County, stated that Helman had told him about seeing Regina and Jerry making love on the back porch and had heard the Simmons children discussing it. He also testified that the four children of school age had missed school for respective periods of 45, 22, 35 and 8 days, and that when he investigated the failure of the children to attend school Mrs. Simmons claimed that they had no shoes, after which he arranged to obtain shoes for the children, but that after they returned to school they began missing classes again. Melvin Jamison, principal of the Easton Elementary School where the children were supposed to attend school, stated that the teacher had reported to him that other children would not associate with the Simmons children because of their body odor and that he tried to correct this situation but was unsuccessful.

Mrs. Elliott, the welfare worker, stated that there was a history of complaints about the Simmons family for a period of about eight years in the various counties in which they had lived. She stated that the house in which they were living was inadequate and ill-kept. A two page report was prepared by Mrs. Elliott and delivered to the court with regard to her investigation of this family. The report was apparently shown to both the prosecuting attorney and counsel for the Simmonses who cross-examined Mrs. Elliott on some of the matters listed therein. Mrs. Elliott offered to make a list of all the complaints she had received, which was later attached to the Statement of Evidence in Lieu of a Transcript captioned "State's Exhibit A."

Mary Handloser, who worked for a private social agency, testified on behalf of the parents and stated that she thought the family had warmth and affection for each other, that the

mother did not hesitate to seek aid from the county when the children were sick and that she did not think the children were unduly dirty. She admitted, however, that missing one-fourth of the school year would be detrimental to the children. Patricia M. Keith, who also worked for a private social agency, testified on behalf of the parents and stated that the house in which the Simmons family lived on University Avenue was not fit for human habitation, but that the one in which they are presently located is an improvement over that one. She further stated that she thought it was best to keep the family together, that it was a typical low-income family and they were endeavoring to do the best they could under the circumstances.

Mrs. Simmons testified that Jerry Louk, about nineteen years of age, her first cousin, was a visitor in their home, and that she had never seen him and Regina doing anything but holding hands and kissing. She stated that the hot water tank in the bathroom was broken and that she washed the younger children in the sink and did the laundry by hand. She stated that she was a good mother and should be allowed to keep her children. Mr. Simmons testified in his own behalf and said that he had no automobile and walked four miles daily to his work as a watchman at a glass plant. He stated that when he heard rumors about Regina being pregnant, apparently resulting from her discussing the matter with her classmates, he had her examined and found that the rumors were not true. The "Exhibit A" which was attached to the Statement of Evidence in Lieu of a Transcript consisted of a long list of complaints received by the Welfare Department, which was apparently objected to because many of the complaints were not presented at the hearing, some of which were serious, such as pilfering from a neighbor, eating off the floor, eating spoiled garbage from a market, using foul language, and various questionable actions of the children.

The order entered by the court authorizing the attachment of "Exhibit A" stated that counsel for the parents objected to it, except for such complaints listed therein that were contained in a report made to the court which apparently was used at the hearing but not contained in the record. It is not

clear as to the exact meaning of this objection. The record in this case does not indicate whether the witnesses were sworn or not or whether any request was made at the time of the hearing for the presence of a court reporter.

The entire proceeding in this matter would appear to be defective in many respects. Although the hearings in a juvenile court are not usually held to the same strict rules of procedure as ordinary cases, the requirement of the law must be followed for a proper hearing to be held. See *In Re Gault*, 387 U.S. 1 and *Kent v. United States*, 383 U.S. 541. In the first place, the petition initiating this proceeding is fatally defective. It states no facts with regard to the improper supervision of the parents and the failure to attend school. It contains only general statements which are conclusions. The statute governing this matter is contained in Code, 49-6-1, as amended, which reads as follows: "If the State department, or a reputable person, believes that a child is neglected, the department or the person may present *a petition setting forth the facts to the juvenile court* in the county in which the child resides, or to the judge of such court in vacation." [Emphasis supplied] In such a case the matter should be remanded for an adequate petition. *In Re Guardianship of Cope*, 106 N.J. Super. 336, 255 A.2d 798.

It is generally required that witnesses be sworn before they are permitted to testify. 98 C.J.S., *Witnesses*, § 320. This is necessary in informal proceedings such as juvenile cases. *In Re Godden*, 158 Neb. 246, 63 N.W.2d 151. However, the admission of unsworn testimony is a mere irregularity and not a jurisdictional defect, and a party should object at the proper time in order to have the witness sworn and such irregularity may be waived by the failure to object. 98 C.J.S., *Witnesses*, § 320e; *Thomas v. Dad's Root Beer & Canada Dry Bottling Co. of Portland, Oregon, a corporation,* (Ore.) 357 P.2d 418. Such irregularity may be corrected upon objection by having the witness sworn, or instructing the jury not to consider such evidence. *State v. Williams*, 49 W.Va. 220, 38 S.E. 495.

The failure to have a court reporter present to take down the evidence and transcribe it is not fatal to a hearing. In any

case where such report of the proceedings is not made or where the reporter's notes or transcription have been lost, a statement of evidence in lieu of a transcript may be made by the parties and submitted to the court for settlement. Rule 80 (e) R.C.P.; Rule 15, Trial Court Rules and Rule 16, Trial Court Rules.

It is not clear from the record just what the attorney for the Simmonses objected to with regard to "Exhibit A" and the report of the welfare worker. It appears that they were two different matters. If the matters contained in "Exhibit A" were not presented in evidence during the hearing of the case they would be improper. In the first place they are hearsay, and in the second place there is no right of cross-examination. Reports of the Welfare Department are not by themselves admissable in evidence. *Pugh v. Pugh,* 133 W.Va. 501, 56 S.E. 2d 901, 15 A.L.R.2d 424; *Lucyk v. Brawner, et al.,* 144 W.Va. 690, 110 S.E.2d 739. See *Paris v. Brown & Hooff,* 143 Va. 896, 129 S.E. 678.

The right to custody of children by the parents is not absolute, but is founded on natural law, and in order to separate a child from its parents on the ground of unfitness there must be clear, cogent and convincing proof. 14 M.J., *Parent and Child,* § 7; *Pierce v. Jeffries,* 103 W.Va. 410, 415, 137 S.E. 651; *Hoy v. Dooley,* 144 W.Va. 64, 105 S.E.2d 877; *State ex rel. Kiger v. Hancock,* 153 W.Va. 404, 168 S.E.2d 798.

The guiding rule in cases of this kind is of course the welfare of the child. *Holstein v. Holstein,* 152 W.Va. 119, 160 S.E.2d 177; *State ex rel. Kiger v. Hancock, supra.* The evidence contained in the record in this case is certainly not sufficient to deprive the parents of the custody of their seven children. It reflects that their living conditions were not the best, and that the family was one of low income, that the failure to attend school was not for the best interest of the children, but the failure to attend school was explained in some instances. The evidence with regard to making love on the porch by Regina and her cousin is insufficient for consideration in this case. It was not only hearsay but was in effect an attempt to impeach the petitioner's own witness.

The assignment of error by the attorney for the parents that the court refused to allow him to introduce after-discovered evidence to the effect that a competent physician had examined Regina and would testify that she was a virgin should have been allowed and considered by the trial court. It was new and material with regard to the hearsay "love making" evidence offered by the petitioner. *State v. Hamric,* 151 W.Va. 1, 151 S.E.2d 252; *State v. Spradley,* 140 W.Va. 314, 84 S.E.2d 156.

In a case very similar to the case at bar, *In Re Guardianship of Cope, supra,* the case was reversed because most of the evidence consisted of witnesses testifying from reports of which they were not the authors and which were not introduced into evidence. Consequently, the evidence was improper and insufficient to deprive the parents of the custody of their children. The case was remanded after reversal with directions for a proper petition with allegations of facts to be prepared and for another hearing with proper evidence to be introduced with regard to the charges contained in the petition. Reports based on hearsay evidence are generally inadmissable. *Trannum v. George,* (Ark.) 201 S.W.2d 1015. Another case similar to the one at bar is that of *In Re Sweet,* (Okla.) 317 P.2d 231, in which the trial court gave the state welfare department permanent custody of certain minor children with authority to effect their adoption and this was reversed because the evidence, which was similar to that used in the instant case, was insufficient to justify depriving the parents of the custody of their children, the testimony largely showing sub-standard living conditions not willfully incurred. It should also be noted that the order awarding the custody, control and guardianship of the children in this proceeding to the Department of Welfare of West Virginia, which in effect terminated parental control, but was objected to by counsel for the parents, did not specifically state that the parents' rights were terminated, as provided in Code, 49-6-5(3), as amended. The order should have followed the statute and been specific in its objective.

For the reasons stated herein, the motion to reverse the judgment of the Juvenile Court of Monongalia County is

granted and the proceeding is dismissed without prejudice with the right on the part of the appellee to file a proper petition and to introduce proper and sufficient evidence to support any factual allegations contained therein.

*Motion to reverse the judgment granted and case dismissed without prejudice.*