IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2021 Term

FILED
**November 19, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-0224

IN RE ADOPTION OF H.G.

Appeal from the Circuit Court of Kanawha County
The Honorable Charles King, Jr., Judge
Case No. 19-A-156

AFFIRMED

Submitted: October 26, 2021
Filed: November 19, 2021

Jeff C. Woods, Esq.
Scott Depot, West Virginia
Counsel for Petitioner L.W.

Tim C. Carrico, Esq.
Charleston, West Virginia
Counsel for Respondent P.Y.

JUSTICE WALKER delivered the Opinion of the Court.
JUSTICE ARMSTEAD and JUSTICE WOOTON dissent and reserve the right to file dissenting opinions.

SYLLABUS BY THE COURT

1.    "'In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review.  We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.  Questions of law are subject to a *de novo* review.'  Syllabus point 2, *Walker v. West Virginia Ethics Commission,* 201 W. Va. 108, 492 S.E.2d 167 (1997)."  Syllabus Point 1, *In re the Adoption of Jon L.,* 218 W. Va. 489, 625 S.E.2d 251 (2005).

2.    "'In the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions.'  Syllabus Point 1, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973)."  Syllabus Point 2, *Lindsie D.L. v. Richard W.S.*, 214 W. Va. 750, 591 S.E.2d 308 (2003).

3.    "'A parent has the natural right to the custody of his or her infant child and unless the parent is an unfit person because of misconduct, neglect, immorality, abandonment or other dereliction of duty, or has waived such right, or by agreement or otherwise has permanently transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by

i

the courts.' Syllabus, *State ex rel. Kiger v. Hancock*, 153 W. Va. 404, 168 S.E.2d 798 (1969)." Syllabus Point 1, *In re Carey L.B.*, 227 W. Va. 267, 708 S.E.2d 461 (2009).

4.     Whether a birth parent has abandoned his or her child under West Virginia Code § 48-22-306 (2001) is a question of fact to be determined from the evidence.

5.     "'The standard of proof required to support a court order limiting or terminating parental rights to custody of minor children is clear, cogent and convincing proof.' Syl. Pt. 6, *In Re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973)." Syllabus Point 2, *Joshua D.R. v. David A.M.*, 231 W. Va. 545, 746 S.E.2d 536 (2013).

6.     The determinative period for finding presumptive parental abandonment under West Virginia Code § 48-22-306(a)(2) (2001) is the six-month period immediately preceding the filing of the adoption petition. But a circuit court may also consider relevant conduct of a parent outside this six-month period when evaluating his or her credibility and intentions.

7.     "The duty of a parent to support a child is a basic duty owed by the parent to the child[.]" Syllabus Point 3, in part, *Wyatt v. Wyatt*, 185 W. Va. 472, 408 S.E.2d 51 (1991).

ii

WALKER, Justice:

Respondent P.Y. has been H.G.'s primary caretaker since he was an infant in 2012, and his legal guardian since 2016.[1] In 2018, this Court affirmed a circuit court order vesting her with sole discretion regarding visitation with the child.[2] When she filed a petition to adopt him in July 2019, the child's birth mother, Petitioner L.W., opposed the adoption even though she had not contacted or visited the child for years. The birth mother's only financial support of the child occurred during a brief period of involuntary wage garnishment in 2019.

After an evidentiary hearing on the adoption petition in January 2020, the circuit court found that the birth mother had abandoned the child within the meaning of West Virginia Code § 48-22-306 (2001) and granted the petition. On appeal to this Court, the birth mother argues that the circuit court violated her constitutional due process rights and erred by finding that the two statutory factors showing presumptive abandonment under West Virginia Code § 48-22-306 were met. We disagree. Giving due deference to the circuit court's factual findings and credibility determinations, we find that it did not

---

[1] West Virginia Code § 48-22-702 (2001) prohibits the disclosure of certain information in adoption proceedings. Given this statutory mandate, and consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015).

[2] *In re H.G.*, No. 17-1131, 2018 WL 4944420, at *1 (W. Va. Oct. 12, 2018) (memorandum decision).

1

abuse its discretion in this case in concluding that (1) involuntary wage garnishment in 2019 did not constitute financial support; and (2) the birth mother failed to visit or communicate with the child for the six months preceding the petition, and long before that. So, we affirm the circuit court's order granting the adoption petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The adoptive mother and the birth mother met when they attended the same church. Shortly after the child was born in May 2012, the adoptive mother and her partner took care packages to the birth mother. From the time the child was four days old, he lived with the adoptive mother for extended periods of time. The birth mother surrendered custody of the child to the adoptive mother in April 2015, before turning herself into authorities to be incarcerated. The adoptive mother has had sole custody of the child since then. The adoptive mother was granted permanent legal guardianship of the child in December 2016.

The child and seven of his siblings were the subject of a 2017 child abuse/neglect civil proceeding where the Department of Health and Human Resources (DHHR) alleged that the birth mother "engaged in domestic violence in front of the children, had an extensive criminal history and history of DHHR intervention."[3] When the petition was filed, the birth mother had custody of only one of her children; her other seven

---

[3] *In re H.G.*, at *1.

children were living with various guardians or in the care of their respective biological fathers.[4]

The circuit court ultimately terminated the parental rights of the child's birth father due to abandonment.[5] The abuse/neglect petition was dismissed against the birth mother after she successfully completed her improvement period. But the circuit court ordered that it was in the best interest of the children to remain with their guardians. So, the child remained in the care of the adoptive mother and she was granted sole discretion regarding visitation. The birth mother appealed to this Court arguing that the circuit court erred by not granting her scheduled visitation with her children.[6] We affirmed the circuit court's ruling stating that the birth mother "did not properly request visitation or assert any evidence to suggest scheduled visitation may be in the children's best interests."[7]

In July 2019, the adoptive mother filed a petition to adopt the child. She stated that the child, who was age seven by then, had been in her sole custody for more than four years. Even though the child's birth mother had not contacted or visited the child for years, she did not consent to the adoption. West Virginia Code § 48-22-301 (2018)

---

[4] *Id.*

[5] *Id.* at *2.

[6] *Id.* at *3.

[7] *Id.*

provides that consent to or relinquishment for adoption of a minor child is required by the child's parents, but the statute lists certain exceptions.[8]  Relevant to this appeal, the statute provides that consent to or relinquishment for adoption is not required where the court finds that the child is abandoned as set forth in West Virginia Code § 48-22-306.

The circuit court conducted an evidentiary hearing on January 9, 2020, where it was undisputed that the birth mother had not contacted or visited the child within the operative six-month time frame before the petition was filed.  The birth mother had made child support payments through involuntary wage garnishment in 2019 of about $500.00 in total.

The adoptive mother testified that the child was in the second grade, doing well in school, and involved in extracurricular activities.  She stated that the birth mother had not seen the child for more than three years; the birth mother had two or three supervised visits with the child when the guardianship matter was in family court in 2016.  The adoptive mother stated those visits "terrified" the child because the birth mother "kept telling [him] that she was going to sneak and take him home and she was going to get him . . . . He would scream and cry.  He didn't want to go."  So, the visits were discontinued.

---

[8] For instance, because the child's birth father's parental rights were terminated, his consent was not required.  W. Va. Code § 48-22-301(b)(1).

The adoptive mother also testified that the birth mother had no visitation or contact with the child in 2017, even during the abuse/neglect proceeding. She stated that the birth mother had no contact with the child in 2018 and 2019, even though she knew where they lived. She stated that the birth mother

> [n]ever dropped off a birthday card. I put on Facebook that— she follows my Facebook. She takes pictures off my Facebook of [the child]—that I'm having his birthday party at the rec center[,] . . . he's having a ball game. This, this, and this. She never came. She never dropped him off a birthday card. But she traveled to South Carolina to see her two older kids last month. . . . She's got two other kids in South Carolina. She hasn't tried to see them in five years.

On cross-examination, the adoptive mother confirmed that she received around four text messages from the birth mother asking to visit the child between February and July 2019. The adoptive mother explained that she did not respond to the birth mother's texts because "I followed her Facebook" and saw her husband P.W. "doing drugs and—being around those children and what she was going through having a different guy in her house ever [sic] time you turned around. She's been with four guys since November. I followed my heart and his best interest." The adoptive mother also admitted that she sent a private message on social media stating, "Please stop. I know that no one will see this, but you have not called or came by to see [the child] in three years and eight months."[9] The adoptive mother stated that it was only after the birth mother "found out I was going

---

[9] The record does not reflect when this message was sent.

5

to file for an adoption that she even text [sic] me." On redirect examination, the adoptive mother was asked if she ever told the birth mother that she could not send cards, or buy clothes or gifts for the child, and she replied, "No."

The birth mother testified that she regularly submitted to drug screens during the 2017 abuse/neglect proceeding and "got rid of the riffraff that was causing" those issues;[10] she had recently divorced P.W. but was pregnant with his child. The birth mother stated that two of her ten children lived with her. She admitted that the child at issue in this case had been in the care of the adoptive mother since April 2015. The birth mother claimed that she bought the child some gifts in 2015 and 2016, including clothes and shoes. She offered no excuse for her failure to support the child financially or visit or communicate with him in 2017 and 2018. The birth mother stated that she filed a petition to modify the guardianship order in January 2019—in family court and circuit court—

---

[10] On cross-examination, the birth mother was asked about the family functioning assessment that was prepared following her psychological evaluation in the 2017 abuse/neglect proceeding. This document detailed extensive abuse and neglect of the birth mother's children: the oldest child "gave a detailed image in her forensic interview of beatings, lack of food, supervision, and medical care, sexual abuse and forced servitude caring for the younger children. The babies weren't exempt from the beatings and she reported that even the infant, at six months of age was whipped with a belt." The family functioning assessment concluded that, "Given the long-term abuse and neglect [the birth mother] perpetrated and allowed to be perpetrated on her children, there is all but no likelihood that she will improve as a parent." The birth mother's counsel objected to this line of questioning but there was no objection to the admission of this document.

6

because she wanted to have visitation with the child. But she claimed that the matter was never set for hearing.[11]

The birth mother stated that in 2019, she sent text messages to the adoptive mother asking if she could set up visitation. But the adoptive mother never responded to her texts. The birth mother stated that the adoptive mother and/or her partner sent messages on social media asking her to leave the child alone or "they would file harassment charges against me."[12] On cross-examination, the birth mother confirmed that she had not paid any child support to the adoptive mother voluntarily; her wages were garnished for child support in 2019. She also admitted that she had not bought the child clothes or gifts in 2019.

In its February 14, 2020 order granting the petition for adoption, the circuit court found that the birth mother had "abandoned the child as that term is defined by West Virginia Code § 48-22-102 and by operation of West Virginia Code § 48-22-306." The circuit court adopted the facts and legal arguments in the adoptive mother's Memorandum

---

[11] At oral argument before this Court, the adoptive mother's counsel stated that neither he, nor the adoptive mother, received a copy of the birth mother's petition to modify the guardianship order. They first learned about this petition at the January 2020 adoption hearing.

[12] It is unclear from the record when this message was allegedly sent.

of Law "filed with the [c]ourt contemporaneously with this [o]rder."[13]  It found the adoptive mother's testimony credible.  In contrast, the circuit court rejected the birth mother's claim that she was prevented from contacting or visiting the child.  It found the birth mother's testimony not credible.  The circuit court concluded that the adoptive mother was of good moral character and able to properly maintain and educate the child.  It also found that the adoption would promote the best interest of the child.  The birth mother appealed this order.

## II.  STANDARD OF REVIEW

We are asked to review a circuit court's order granting a petition for adoption following a finding of parental abandonment.  We apply the following two-prong deferential standard of review:

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review.  We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.  Questions of law are subject to a *de novo* review.[14]

---

[13] The adoptive mother's Memorandum of Law was not included in the appendix record to this Court.

[14] Syl. Pt. 1, *In re the Adoption of Jon L.*, 218 W. Va. 489, 625 S.E.2d 251 (2005) (quoting Syl. Pt. 2, *Walker v. W. Va. Ethics* Comm'n, 201 W. Va. 108, 492 S.E.2d 167 (1997)).

On review, this Court "will not weigh evidence or determine credibility."[15] Credibility determinations are in the sole discretion of the circuit court. We now turn to the parties' arguments.

### III. ANALYSIS

The procedures for adoption of minor children in this State are set forth in West Virginia Code §§ 48-22-101 to -704 (2015), which provide a detailed roadmap for reaching a goal of importance to the Legislature and this Court: "permanent placement in secure, loving homes for every child who cannot, for any number of reasons, find that security and love with his or her biological parents."[16] Adoptions are to be decided on a case-by-case basis through the exercise of discretion by the circuit courts, giving due consideration to all relevant factors in determining what is in the adoptive child's best interest.[17]

In this case, the birth mother argues that the circuit court erred in granting the petition for adoption over her objection. She raises two arguments, which are taken

---

[15] *State v. Guthrie*, 194 W. Va. 657, 669, 461 S.E.2d 163, 175 (1995).

[16] *In re Adoption of J.S.*, 245 W. Va. 164, __, 858 S.E.2d 214, 218-19 (2021).

[17] *See In re D.P.*, 230 W. Va. 254, 257 737 S.E.2d 282, 285 (2012) ("It is axiomatic that, in any contest involving the care and custody of a minor, 'the welfare of the child is the polar star by which the discretion of the court will be guided.' Syllabus Point 2, *State ex rel. Lipscomb v. Joplin,* 131 W. Va. 302, 47 S.E.2d 221 (1948).").

and restated from her brief:[18] (1) the circuit court's order granting the adoption is legally incorrect "as it represents an improper *de facto* termination of [her] parental rights" in violation of her constitutional due process rights; and (2) the circuit court's order permitting the adoption under a theory of abandonment, as that term is defined by West Virginia Code § 48-22-306, is factually incorrect because the adoptive mother "engaged in a pattern of behavior which prevented" her from contacting or visiting the child.

## A. Termination of Parental Rights under West Virginia Code Chapter 48

The birth mother argues that the circuit court's order "permitting the adoption represents an absolute denial of due process" under the "Fourteenth Amendment of the Constitution of the United States of America and Article III of the Constitution of the State of West Virginia." She claims that the adoption is tantamount to "an improper *de facto* termination of [her] parental rights." The birth mother notes that her parental rights were not terminated in the 2017 child abuse/neglect proceeding, so she claims this case implicates "concerns regarding the potential restriction of visitation by parents" discussed

---

[18] The birth mother's brief does not comply with Rule 10(c) of the West Virginia Rules of Appellate Procedure. She identifies seven assignments of error but does not provide separate, distinct contentions corresponding to each of the assignments of error in the argument section of her brief. As this Court stated in *Metro Tristate, Inc. v. Public Service Commission of West Virginia*, __ W. Va. __, __, 859 S.E.2d 438, 444 (2021), this presents a challenge for both this Court and the other party to understand the connection between the errors initially alleged and the various contentions made later.

in *Troxel v. Granville*.[19]  The adoptive mother responds that the issue of visitation between the birth mother and the child was resolved by this Court in 2018 when we affirmed the circuit court's order leaving visitation within her discretion.  We agree that the issue of visitation between the birth mother and the child is not before us.

We begin our analysis with the premise that a natural parent generally has a right to custody of his or her child.  We have previously held that,

> [i]n the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions.[20]

The Supreme Court of the United States has interpreted parental rights broadly to encompass all of the daily decisions involved in the upbringing of one's children.[21]  In *Troxel*, the Supreme Court found that the application of a Washington nonparental visitation statute to a parent and her family violated the parent's due process

---

[19] 530 U.S. 57 (2000).

[20] Syl. Pt. 2, *Lindsie D.L. v. Richard W.S.*, 214 W. Va. 750, 591 S.E.2d 308 (2003) (quoting Syl. Pt. 1, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973)).

[21] *See e.g., Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978).

rights to make decisions concerning the care, custody, and control of her daughters.[22]

According to the Supreme Court, "so long as a parent adequately cares for . . . her children

(*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private

realm of the family to further question the ability of that parent to make the best decisions

concerning the rearing of" the children.[23]

The birth mother's reliance on *Troxel* is misplaced. This case is readily

distinguishable because she is not a fit custodial parent. Rather, the circuit court found that

she had abandoned the child. The birth mother surrendered custody of the child to the

adoptive mother in April 2015 and had not assumed any parental responsibilities or made

any parental decisions regarding this child for several years. The birth mother's

involvement with the child has been almost nonexistent.

In *Lehr v. Robertson*,[24] a case involving an unwed birth father's attempt to

block his child's adoption by the mother's new husband, the Supreme Court observed that

"the rights of the parents are a counterpart of the responsibilities they have assumed."[25]

And "[t]he significance of the biological connection is that it offers" a birth parent "an

---

[22] 530 U.S. at 68.

[23] *Id*. at 68-69.

[24] 463 U.S. 248 (1983).

[25] *Id*. at 257.

12

opportunity" that no one else possesses to "develop a relationship with his offspring."[26]

But a birth parent's failure to grasp that opportunity can have significant consequences. This Court has held that a natural parent may forfeit his or her rights through abandonment, among other things:

> A parent has the natural right to the custody of his or her infant child and unless the parent is an unfit person because of misconduct, neglect, immorality, *abandonment* or other dereliction of duty, or has waived such right, or by agreement or otherwise has permanently transferred, relinquished or surrendered such custody, the right of the parent to the custody of his or her infant child will be recognized and enforced by the courts.[27]

West Virginia Code allows for parental rights to be terminated through State-initiated child abuse/neglect civil proceedings—governed by Chapter 49[28]—as well as

---

[26] 463 U.S. at 262. In *Lehr*, the Supreme Court discussed the difference between a developed parent-child relationship—implicated in *Stanley v. Illinois*, 405 U.S. 645 (1972)—and the potential relationship involved in *Quilloin v. Walcott*, 434 U.S. 246 (1978). Because the father in *Lehr* "never had any significant custodial, personal, or financial relationship" with the child, the Court was only concerned with whether the state adequately protected his opportunity to form the relationship. 463 U.S. at 262.

[27] Syl. Pt. 1, *In re Carey L.B.*, 227 W. Va. 267, 708 S.E.2d 461 (2009) (quoting Syl. *State ex rel. Kiger v. Hancock*, 153 W. Va. 404, 168 S.E.2d 798 (1969) (emphasis added)).

[28] W. Va. Code § 49-4-601 (2019). In Chapter 49, "abandonment" is defined as "any conduct that demonstrates the settled purpose to forego the duties and parental responsibilities to the child[.]" W. Va. Code § 49-1-201 (2018); *see also* W. Va. Code § 49-1-201 (defining "neglected child" as a child "[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical (continued . . .)

through adoptions, including stepparent adoptions[29]—governed by Chapter 48.[30] All adoptions, whether the adopting parent is a foster parent, a guardian, a private party, or a relative, have the effect of completely and permanently terminating a birth parent's rights.[31] And like State-initiated actions, a parent's failure to financially support and communicate or visit with her child for an extended period of time is grounds for terminating that parent's rights and denying her the right to prevent an adoption.

Even though the birth mother's parental rights were not terminated in the 2017 abuse/neglect proceeding, the 2019 adoption proceeding could proceed without her consent if there was sufficient evidence to demonstrate abandonment.[32] The same circuit court that conducted the abuse/neglect proceeding presided over the adoption proceeding two years later. Importantly, that court heard evidence that the birth mother had not

---

care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian[.]").

Because parental termination proceedings under Chapter 49 require the expenditure of limited State resources, the State is only compelled to file an abuse/neglect petition when a child's "physical or mental health" is presently "harmed or threatened." *Id*. The State has no immediate interest in terminating an absent parent's rights when the child is safe in the suitable care of the other parent or guardian.

[29] *See* W. Va. Code § 48-22-116 (defining "stepparent adoption" as "an adoption in which the petitioner for adoption is married to one of the birth parents of the child or to an adoptive parent of the child.").

[30] W. Va. Code §§ 48-22-101 to -704.

[31] W. Va. Code § 48-22-703(a) (2001).

[32] W. Va. Code § 48-22-301(b)(2).

14

voluntarily paid child support or contacted or visited with the child during the time frame between those proceedings.

West Virginia Code § 48-22-301(b)(2) provides that a birth parent's relinquishment of his or her parental rights and/or consent to the child's adoption is not required once the circuit court finds that he or she "has abandoned the child as set forth in [West Virginia Code] § 48-22-306[.]" And after the order of adoption was entered, the birth mother's parental rights were terminated under West Virginia Code § 48-22-703. "From the moment an adoption order is entered, an adoptive parent has the same rights as if the child had been born to him or her."[33] For these reasons, we reject the birth mother's due process challenge. She does not dispute the fact that she was provided notice of the adoption proceeding as well as a full opportunity to be heard.[34]

We now turn to the birth mother's claim that the circuit court erred by finding that the statutory factors showing presumptive abandonment under West Virginia Code § 48-22-306 were met.

---

[33] *In re Adoption of J.S.*, 245 W. Va. at --, 858 S.E.2d at 219 (quotation marks omitted).

[34] *See* Syl. Pt. 2, in part, *In re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973) ("[T]he Due Process Clauses of the West Virginia and United States Constitutions prohibit a court or other arm of the State from terminating the parental rights of a natural parent having legal custody of his child, without notice and the opportunity for a meaningful hearing.").

### B. *Parental Abandonment of a Child under W. Va. Code § 48-22-306*

Whether a birth parent has abandoned his or her child under West Virginia Code § 48-22-306 (2001) is a question of fact to be determined from the evidence.[35] So, in determining whether the circuit court abused its discretion in granting the petition for adoption, we must first consider whether its factual finding of parental abandonment was clearly erroneous. We note that "[t]he standard of proof required to support a court order limiting or terminating parental rights to custody of minor children is clear, cogent and convincing proof."[36]

West Virginia Code § 48-22-102 (2001) defines "abandonment" as "any conduct by the birth mother . . . that demonstrates a settled purpose to forego all duties and relinquish all parental claims to the child." A circuit court may find an intent to abandon based on a parent's conduct in failing to establish or maintain a relationship with his or her child.[37] West Virginia Code § 48-22-306 outlines objective conduct that presumptively constitutes abandonment:

---

[35] *See e.g.*, *In re Adoption of I.R.R.*, 839 N.W.2d 846, 850 (N.D. 2013) ("Whether a child has been abandoned is a question of fact, and a district court's findings of fact will not be reversed on appeal unless they are clearly erroneous."); *In re Adoption of Searle*, 346 S.E.2d 511, 514 (N.C. 1986) ("Whether a biological parent has a willful intent to abandon his child is a question of fact to be determined from the evidence.").

[36] Syl. Pt. 2, *Joshua D.R. v. David A.M.*, 231 W. Va. 545, 746 S.E.2d 536 (2013) (quoting Syl. Pt. 6, *In Re Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973)).

[37] *I.R.R.*, 839 N.W.2d at 851.

(a) Abandonment of a child over the age of six months shall be presumed when the birth parent:

(1) Fails to financially support the child within the means of the birth parent; and

(2) Fails to visit or otherwise communicate with the child when he or she knows where the child resides, is physically and financially able to do so and is not prevented from doing so by the person or authorized agency having the care or custody of the child: Provided, That such failure to act continues uninterrupted for a period of six months immediately preceding the filing of the adoption petition.

So, the plain language of the statute requires the failure of the child's birth parent to (1) financially support the child within his or her means, and (2) visit or communicate with the child when the birth parent knows where the child resides, is physically and financially able to do so, and has not been prevented from doing so, for a period of six months prior to the filing of the adoption petition. "Unlike subsection (2) which requires the lack of communication to exist for the six months immediately preceding the adoption petition, the support requirement of subsection (1) contains no such temporal parameters."[38]

We do not have any cases on this but looking at a similar statute, the Supreme Court of North Carolina has stated that trial courts may consider a parent's conduct occurring outside the six-month statutory time frame in evaluating his or her credibility

---

[38] *In re Adoption of C.R.*, 233 W. Va. 385, 390, 758 S.E.2d 589, 594 (2014).

and intentions.[39]  We find this directive useful in resolving this appeal, particularly the birth mother's claim that she intended to reestablish visitation with the child within the relevant six-month time frame but was prevented by the adoptive mother.  We hereby hold that the determinative period for finding presumptive parental abandonment under West Virginia Code § 48-22-306(a)(2) (2001) is the six-month period immediately preceding the filing of the adoption petition.  But a circuit court may also consider relevant conduct of a parent outside this six-month period when evaluating his or her credibility and intentions.[40]

---

[39] In the case of *In re Matter of G.G.M.*, 855 S.E.2d 478 (N.C. 2021), the Supreme Court of North Carolina affirmed a trial court's order granting a maternal grandmother and step-grandfather's petition to terminate their grandchildren's birth father's parental rights due to abandonment.  The court noted that a trial court may terminate a parent's parental rights when "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion.  N.C.G.S. § 7B-1111(a)(7) [(2019)]".  855 S.E.2d at 481.  It upheld the trial court's finding of abandonment when the birth father had no contact with the children for a period of over five years.  *Id*. at 482.  The court stated that the trial court was entitled to consider the father's years-long absence from the children's lives when determining his credibility and intentions during the six months preceding the filing of the petition.  *Id*. at 483-84; *see also Matter of N.D.A.*, 833 S.E.2d 768, 773 (N.C. 2019) (looking to a parent's conduct outside the six-month window when determining willful abandonment in a parental termination case).

[40] The dissent worries that the Court's opinion expands the statutory six-month time frame for determining whether presumptive abandonment is met.  But we impose no such rule.  Rather, today's decision adopts the clear statutory directive of West Virginia Code § 48-22-306(a)(2).  Because we are dealing with fundamental personal liberty interests protected by the West Virginia and United States Constitutions, we apply our longstanding approach and afford circuit courts broad discretion when resolving issues of witness credibility and intentions on the ultimate issue of whether parental abandonment has occurred.  "In cases involving minor children a heavier burden is cast upon the court to utilize to the fullest extent all its power of perception in evaluating the witnesses, their testimony, and the children's best interests."  *Bridges v. Bush*, 220 S.W.3d 259, 261 (Ark. App. 2005).

On West Virginia Code § 48-22-306(a)'s first requirement, the adoptive mother testified that the birth mother failed to provide financial support for the child for years. But she received a small amount of child support through the birth mother's wage garnishment in the first part of 2019, totaling about $500.00. The birth mother conceded that in 2019 she never made a voluntary payment of child support or bought the child gifts or clothes. In *In re Adoption of C.R.*, this Court found that the birth father had an obligation to financially support his child regardless of a court order and that recent involuntary payment of child support through wage withholding alone was insufficient to defeat a finding that he failed to financially support his child.[41] We noted "that other jurisdictions also have concluded that the involuntary payment of child support through wage withholding is sufficient to demonstrate a lack of financial support so as to establish abandonment."[42]

---

[41] *Id*. at 389-90, 758 S.E.2d at 593-94.

[42] *Id*. at 391, 758 S.E.2d at 595; *see In re K.D.*, 647 S.E.2d 360, 366 (Ct. App. Ga. 2007) (approving termination of parental rights based, in part, upon finding that father failed to fulfill his obligation to support his child where father failed to provide any support during child's first year of life; he involuntarily paid the balance of his child support arrearage when his income tax refund was intercepted and used to pay the balance due; and "the only child support [father] has paid has been that which was garnished from his wages"); *see also In Int. of A.F.W.*, 543 S.W.3d 66, 69 (Mo. Ct. App. 2018) (finding birth father failed to support his child financially when the only evidence of support was child support payments garnished from his monthly social security disability checks; this was not a voluntary act by the father).

Other courts have found that child support payments made through involuntary wage garnishment were sufficient to overcome this failure-to-support prong. *See e.g., In*
(continued . . .)

19

Even parents with modest incomes can meet this baseline obligation, as West Virginia Code § 48-22-306(a)(1) faults a parent for failing "to financially support the child within [his or her] means[.]" So, the amount of the child support is not the issue here. Rather, it is the fact that the birth mother only paid child support when forced to do so through wage garnishment in 2019 and purchased no gifts or anything else for him for years. This Court has held that "[t]he duty of a parent to support a child is a basic duty owed by the parent to the child[.]"[43] In this case, the birth mother offered no evidence of "compelling circumstances" that would have relieved her of this duty to support her child.[44] So, the circuit court properly found that the birth mother failed to financially support the child, establishing the first requirement of the statutory presumption of abandonment.

On West Virginia Code § 48-22-306(a)'s second requirement, the evidence shows that the birth mother failed to visit or otherwise communicate with the child within the six months prior to the filing of the adoption petition. On this issue, the parties agree

---

*re Adoption of Hayley*, 740 N.Y.S.2d 557, 563 (Fam. Ct. Oswego Co., N.Y. 2000) (not adopting proposition that support payments, made in accordance with a wage deduction order, were automatically deemed "involuntary."). But this Court has harshly criticized parents who only financially support their children when forced to do so. *See M.B. v. J.C.H.*, No. 17-0028, 2017 WL 5629691, at *2 (W. Va. Nov. 22, 2017) (memorandum decision) ("despite petitioner's dissatisfaction with this ruling and his attempts to distinguish his own case from *In re Adoption of C.R.*, the fact remains that payment of child support through wage withholding is insufficient to establish that petitioner financially supported the child.").

[43] Syl. pt. 3, in part, *Wyatt v. Wyatt*, 185 W. Va. 472, 408 S.E.2d 51 (1991).

[44] *See* W. Va. Code § 48-22-306(d).

20

that the last physical interaction between the birth mother and the child occurred in 2016. Other contact since that time, including telephone calls, letters or cards, was likewise nonexistent. The adoptive mother testified that the birth mother never attended the child's school events or birth parties, even when invitations were posted on social media. The record amply demonstrates that the birth mother failed to expend even minimal effort to note important occasions in her child's life, such as the sending of a birthday card in 2017, 2018, and 2019.

We agree with the circuit court that the adoptive mother clearly and convincingly invoked the presumption of abandonment defined in West Virginia Code § 48-22-306, and the burden of persuasion to rebut the presumed abandonment shifted to the birth mother. West Virginia Code § 48-22-306(d) states, in relevant part, that "[n]otwithstanding any provision in this section to the contrary, any birth parent shall have the opportunity to demonstrate to the court the existence of compelling circumstances preventing said parent from supporting, visiting or otherwise communicating with the child[.]"

The birth mother contends that the adoptive mother prevented her from seeing the child in 2019. She points to four or five text messages she sent to the adoptive mother between February and July 2019 asking to visit the child, where the adoptive mother did not respond. The birth mother also claims that the adoptive mother and/or her partner sent messages through social media asking her to stop contacting them. In contrast,

21

the adoptive mother contends that the birth mother sent those text messages—after years of silence—only because she had heard that the adoption petition was imminent. So, the pivotal question before the circuit court was whether the adoptive mother demonstrated the existence of compelling circumstances preventing her from visiting or contacting the child in the six months preceding the adoption petition. The circuit court was not impressed by the birth mother's claim and rejected it, finding her testimony not credible. We are unwilling to disturb this credibility finding when the birth mother's claim was wholly refuted by her complete lack of contact with the child in 2017 and 2018.

In similar fashion, this Court found that the second statutory requirement was met in *C.R.*, when the father, who was discouraged but not forbidden from seeing the child, failed to visit or otherwise communicate with him in the six months prior to the filing of the adoption petition.[45] In *C.R.*, we found that prior orders requiring court permission before the father had visitation with his child could constitute "compelling circumstances" under West Virginia Code § 48-22-306(d) sufficient to rebut the statutory presumption, but that the father failed to present any evidence that he was prevented from seeking the permission that was required to visit his child. In the case of *In re Adoption of T.B.*,[46] this Court also found that the respondents' preference did not excuse the birth mother's lack of

---

[45] 233 W. Va. at 391, 758 S.E.2d at 595.

[46] No. 17-0363, 2018 WL 678614, at *5 (W. Va. Feb. 2, 2018) (memorandum decision).

22

visitation or communication with the child.  In that case, the birth mother testified that the respondents wished that she no longer come to their home given the parties' dispute as to whether she overdosed on drugs during a visit with the child.[47]  This Court stated that even assuming that a prior court order prohibited the birth mother from going to respondents' home or contacting them by phone, there was no evidence that the birth mother was prevented from seeking a modification of that order.[48]

In this case, the birth mother filed a petition to modify the guardianship arrangement in an attempt to obtain visitation with the child in January 2019.  She filed this petition within the six-month time frame immediately preceding the July 2019 adoption petition.  But the birth mother took no action on that petition; importantly, she neither served the adoptive mother nor requested a hearing.  Under similar facts, the Supreme Court of Tennessee concluded in *In re Adoption of Angela E.*,[49] that despite the fact that the biological father had filed a visitation petition, he willfully failed to visit the child.  The father had not exercised visitation for almost three years, and after filing his petition to reinstate his visitation, he took no further action to pursue it and offered no reasonable excuse for failing to do so.[50]  The court concluded that it simply was not a case

---

[47] *Id*. at *5.

[48] *Id*.

[49] 402 S.W.3d 636 (Tenn. 2013).

[50] *Id*. at 642.

23

where a parent was actively trying to maintain visitation like *In re Adoption of A.M.H.*[51]

In *A.M.H.*, the parents were actively pursuing visitation with the courts during the pertinent four-month period and importantly, they had continually visited and maintained a relationship with their child.[52] The case before us is similar to *In re Adoption of Angela E.* The birth mother did not actively pursue her request to modify the guardianship order regarding visitation nor maintain any sort of relationship with the child.

Setting aside the lack of visitation, it is also significant that the birth mother failed to communicate with the child within the six-month time frame immediately preceding the adoption petition. In *Rodgers v. Rodgers*,[53] the court stated that it was "unwilling to hold that when a parent cannot have visitation with her children, due to a court order, that gives the parent justifiable cause to make no effort in continuing a relationship with the children."[54] As the *Rodgers* court explained, the birth mother

> could have made telephone calls to the children, sent birthday or Christmas cards, letters, or emails, but she attempted to do none of these. She also did not attend any school, church, or

---

[51] 215 S.W.3d 793 (Tenn. 2007).

[52] *Id*. at 798.

[53] 519 S.W.3d 324 (Ark. 2017).

[54] *Id*. at 328. Even when a parent is incarcerated, courts have determined that his or her failure to communicate with a child constitutes abandonment. *See e.g.*, *In re Adoption of C.A.L.*, 35 N.E.3d 44, 53 (Ohio 2015) (stating father's incarceration did not prevent him from communicating with his child).

sporting events involving her children.  She failed to show an interest in their lives despite living approximately 150 feet from the children.[55]

We find this reasoning persuasive to the matter before us.  The birth mother made no attempt to send letters to the child or attend his birthday parties or school functions within the relevant six-month period.  For these reasons, the evidence supports the circuit court's finding of parental abandonment and we cannot conclude that it is clearly erroneous.  We have also not been presented with any evidence sufficient to convince us it has abused its discretion in granting the petition for adoption.  So, we affirm its order.

## IV.  CONCLUSION

For the reasons set out above, we affirm the February 14, 2020 order of the Circuit Court of Kanawha County granting the petition for adoption.

Affirmed.

---

[55] *Id.*